(June 29, 1917.)

THE MOUNTAIN HOME LUMBER COMPANY, LTD., a Corporation, Appellant, v. D. R. SWARTWOUT, Appellant, and ALMA LORENE MESEROLE, Formerly ALMA LORENE SMITH, E. D. MESEROLE and CLARA LUDELL SMITH, Respondents.

[166 Pac. 271.]

AGENCY—EXECUTION SALE—NOTICE OF EXISTING EQUITIES—BONA FIDE PURCHASER—LACK OF CONSIDERATION—AFTER-ACQUIRED TITLE—ESTOPPEL.

1. A purchaser at an execution sale of realty, who takes the property with actual notice that the judgment debtor had given both a bond for a deed and a deed for the property to a third party before the lien of the judgment attached, is not a *bona fide* purchaser.

2. A purchaser at an execution sale of realty who takes the property with constructive notice that a judgment prior to the one under which he purchases had impressed such property with a prior lien, is not a *bona fide* purchaser.

3. Where a judgment creditor bids in property of the judgment debtor, at an execution sale, and credits upon the judgment the amount bid, no valuable consideration passes for such purchase, since it amounts to nothing more than a cancellation, *pro tanto*, of a preexisting indebtedness, and such purchase conveys only the legal title to the judgment creditor, subject to existing equities.

4. One who parts with a consideration neither valuable nor irrevocable is not a *bona fide* purchaser.

5. Where one acting as secretary, general manager and agent of a corporation dealing in land, with full authority to make conveyances on behalf of such corporation, induces a prospective purchaser to buy a tract of land which he represents as belonging to the corporation, when in fact it does not so belong, and on behalf of the corporation gives the purchaser a deed for the land, and thereafter acquires title to the land himself, both he and his successors in interest are estopped from asserting title to the land as against such purchaser.

6. G., as agent of a corporation, conveyed to S. land which he represented as belonging to the corporation, but which in fact did not so belong. Afterward G. acquired title for himself without the knowledge of S. *Held*, that such title as G. acquired became impressed with a trust for the benefit of S., and when G.'s supposed interest was subsequently purchased on execution sale by a judgment creditor of G., such purchaser took only such title and interest as G. had, and must also be deemed to have taken the legal title in trust for S., subject to every element of estoppel that could be urged against G.

[As to defenses available to defendant in execution when sued in ejectment by purchaser thereunder, see note in 84 **Am. Dec.** 570.]

APPEAL from the District Court of the Fourth Judicial District, for Elmore County. Hon. Chas. O. Stockslager, Judge.

Action to quiet title. Judgment for defendants and cross-plaintiffs, Meserole and Smith. *Reversed.*

J. R. Smead, Elliott & Healy, for Appellant Swartwout.

"A person who acquires a legal title or an equitable title or interest in a given subject matter, even for a valuable consideration, but with notice that the subject matter is already affected by an equity or equitable claim in favor of another, takes it subject to that equity. (1 Pomeroy's Eq. Jur., 3d ed., sec. 591, p. 964.)

Although one claimant holds the legal title, yet if at the time of his purchase he was charged with notice of an existing equitable right in the land, such notice gives the earlier equitable right priority over the legal title. (2 Pomeroy's Jur., sec. 681.)

Nor is it important whether the notice to one about to purchase the legal title to land is actual or constructive. (2 Pomeroy's Eq. Jur., sec. 690.)

Two equities are equal when both parties are equally entitled to the consideration and protection of a court of equity. In such a case the earlier equity prevails over the later. (2 Pomeroy's Eq. Jur., sec. 683, p. 1189.) An agent making false representations as to his principal's title to real estate is estopped thereafter to assert any title inconsistent with his representations. (2 Pomeroy's Eq. Jur., sec. 807; *Crosby v. Meeks,* 108 Ga. 126, 33 S. E. 913; *Eastwood v. Standard Mines & Mill Co.,* 11 Ida. 195, 81 Pac. 382.)

Where a person induces another to purchase property, representing to him that it is free from encumbrance, such person will be estopped afterward to claim under a mortgage or judgment lien existing at the time of his false representations, and subsequently purchased by him. (16 Cyc. 784; *Briggs v. Langford,* 59 Hun, 615, 12 N. Y. Supp. 657; *Bitting's Appeal,* 17 Pa. St. 211; 15 Am. & Eng. Ency. Law, 2d ed., 1184; *Central Coal & Iron Co. v. Walker's Excx,* 24 Ky. Law Rep. 2191, 73 S. W. 778.)

One who, in a representative capacity, assumes to sell and convey to another the entire estate in land, is estopped, as against the purchaser, from asserting an estate in his own right in the same land; although the first sale and deed were void. (*Wells v. Steckelberg,* 52 Neb. 597, 66 Am. St. 529, 32 N. W. 865; *Carothers v. Alexander,* 74 Tex. 309, 328, 12 S. W. 4.)

The estoppel runs against the guilty party and against those in privity with him, if such privies have either form of notice, or knowledge. (16 Cyc. 798; 11 Am. & Eng. Ency. 415 (3) ; *Tefft v. Munson,* 57 N. Y. 97, 99.)

By crediting the amount of its bid upon its own judgment, plaintiff merely canceled to that extent a pre-existing indebtedness, and one which could be revived if title to the land should prove defective. Such a transaction does not furnish a valuable consideration. (*Land v. Hea,* 20 Ida. 250, 118 Pac. 506; *Holden v. Garrett,* 23 Kan. 98; *Ayres v. Duprey,*

27 Tex. 593, 86 Am. Dec. 657; *Dickerson v. Tillinghast,* 4 Paige Ch. (N. Y.) 215, 25 Am. Dec. 528; *Wright v. Douglass,* 10 Barb. (N. Y.) 27; *Williams v. Hollingsworth,* 1 Strob. Eq. (S. C.) 103, 47 Am. Dec. 527.)

Defendant Smith purchased with both notice and knowledge of the estoppel against Garrett. This also estops her to deny Swartwout's claim. (Tiffany, Real Property, sec. 457; *Froman v. Madden,* 13 Ida. 138, 88 Pac. 894.) The actual notice and knowledge had by both plaintiff company and defendant Smith is sufficient to defeat their claims. (21 Am. & Eng. Ency., 584–590; *Wood v. Rayburn,* 18 Or. 3, 17, 22 Pac. 521; *Mull v. Orme,* 67 Ind. 95.)

W. L. Harvey and W. C. Howie, for Appellant Mt. Home Lbr. Co.

The courts universally hold that where title or interest of the party sought to be estopped is a matter of record there could be no estoppel. (*Campbell v. Jacobson,* 145 Ill. 389, 34 N. E. 39; *Gardner v. Pierce,* 22 Nev. 146, 36 Pac. 782; *Blue Ridge Marble Co. v. Duffy,* 128 Ind. 79, 27 N. E. 430; *Porter v. Wheeler,* 105 Ala. 451, 17 So. 221; *Griswold v. Boley,* 1 Mont. 545; *Cornish v. Woolverton,* 32 Mont. 456, 108 Am. St. 598, 81 Pac. 4; *Murphy v. Jackson,* 69 Miss. 403, 13 So. 728; *Waits v. Moore,* 89 Ark. 19, 115 S. W. 931; *Geisendorff v. Cobbs,* 47 Ind. App. 573, 94 N. E. 236; *Oberheim v. Reeside,* 116 Md. 265, 81 Atl. 590; *Brant v. Va. Coal and Iron Co.,* 93 U. S. 326, 23 L. ed. 927.)

"To enable a man to set up a title by estoppel, he must have been ignorant of the true state of the title at the time he took it, or been without means of ascertaining it by a reference to records." (16 Cyc. 738–741; 3 Washburn, Real Property, 81.)

As a rule the doctrine of title by estoppel does not apply in the absence of personal covenants to a title subsequently acquired in a different right. (16 Cyc. 712; *Smith v. Penny,* 44 Cal. 161; *Davis v. Davis,* 26 Cal. 23, 85 Am. Dec. 157.)

One making a conveyance in a representative capacity where there is nothing in the conveyance to indicate a purpose to bind himself individually, is not estopped from setting up an adverse title held by him at the time of conveyance.    (*Wm. D. Cleveland & Sons v. Smith* (Tex. Civ. App.), 113 S. W. 547; *Dean v. Parker,* 88 Cal. 283, 26 Pac. 91; *Gjerstadengen v. Van Duzen,* 7 N. D. 612, 66 Am. St. 679, 76 N. W. 233; *Gjerstadengen v. Hartzell,* 9 N. D. 268, 81 Am. St. 575, 83 N. W. 230; *Spears v. Weddington,* 146 Ky. 434, 142 S. W. 679.)

Nor is he estopped from setting up an adverse after-acquired title.    (*Flemming v. Ray,* 86 Ga. 533, 12 S. E. 944; *Consolidated Rep. Min. Co. v. Lebanon Min. Co.,* 9 Colo. 343, 12 Pac. 212; *Jackson v. Hoffman,* 9 Cow. (N. Y.) 271; *Irish v. Stevens,* 154 Iowa, 286, 134 N. W. 634.)

Anyone purchasing at an execution sale, including the debtor, who may credit the payment on his judgment is a *bona fide* purchaser.    (*Pugh v. Highley,* 152 Ind. 252, 71 Am. St. 327, 53 N. E. 171, 44 L. R. A. 392; *Sternberger v. Ragland,* 57 Ohio St. 148, 48 N. E. 811; *Conley v. Redwine,* 109 Ga. 640, 77 Am. St. 398, 35 S. E. 92; *Hart v. Gardner,* 81 Miss. 650, 33 So. 442, 497; *Sharp v. Shea,* 32 N. J. Eq. 65; *Newman v. Davis,* 24 Fed. 609; *Low v. Blinco,* 10 Bush (73 Ky.), 331; *Smith v. Farmers & Merchants' Nat. Bank,* 57 Or. 82, 110 Pac. 410; *Feinberg v. Stearns,* 56 Fla. 279, 131 Am. St. 119, 47 So. 797; *Hendryx v. Evans,* 120 Iowa, 310, 94 N. W. 853; *Wood v. Morehouse,* 45 N. Y. 368; *Motley v. Jones,* 98 Ala. 443, 13 So. 782; *McMurtie v. Riddell,* 9 Colo. 497, 13 Pac. 181.)

The record of their deed and contract cannot be actual notice nor constructive notice to plaintiff for the reason that they are both from a party who is absolutely a stranger to the chain of title.    (*Harris v. Reed,* 21 Ida. 364, 121 Pac. 780; 2 Pomeroy's Eq. Jur., sec. 658.)

E. M. Wolfe, for Respondents Smith.

Respondents Smith have the right to assume that the Great Western Beet Sugar Co. is a stranger to the title.    That

though it executed a deed to the property it had no title to convey and that deed conveyed no title. For this reason of course, Swartwout obtained no title. They had no right to believe that the company intended to convey to Swartwout the property described in the instrument, since no person is supposed to convey property to which he has no title. The Smiths, therefore, were justified in buying at the sheriff's sale the title, which appeared of record to be in John H. Garrett, the defendant in the suit in which the sale was being made. (*Harris v. Reed*, 21 Ida. 364, 121 Pac. 780.)

A purchaser at a sheriff's sale is practically the same as a purchaser from the owner and is as fully protected. (*Riley v. Martinelli*, 97 Cal. 575, 33 Am. St. 209, 32 Pac. 579, 21 L. R. A. 33; *Johnson v. Equitable Securities Co.*, 114 Ga. 604, 40 S. E. 787, 56 L. R. A. 933; *De Lany v. Knapp*, 111 Cal. 165, 52 Am. St. 160, 43 Pac. 598; *Pugh v. Highley*, 152 Ind. 252, 71 Am. St. 327, 53 N. E. 171, 44 L. R. A. 392.)

Even though Garrett might be estopped, a purchaser at execution sale would not be estopped unless the record disclosed want of title in Garrett. (*Equitable Loan & Security Co. v. Lewman*, 124 Ga. 190, 52 S. E. 599, 3 L. R. A., N. S., 879.)

BUDGE, C. J.—This is an action to quiet title, brought by appellant, Mountain Home Lumber Company, Limited, which shall hereafter be designated as the Lumber Company, against appellant, Swartwout and respondents, Alma Lorene Meserole, formerly Alma Lorene Smith, E. D. Meserole, and Clara Ludell Smith. A cross-complaint was filed by appellant, Swartwout, and a separate cross-complaint by respondents, Meserole and Smith, respectively, asking that the title be quieted in them. The trial court gave judgment, quieting title in respondents, Meserole and Smith. From this judgment the Lumber Company and Swartwout have prosecuted separate appeals.

Prior to the accruing of any of the several claims the title to the property was in one William C. Niblack. One John H. Garrett was secretary of the Great Western Beet Sugar Com-

pany, which shall hereafter be designated as the Sugar Company, a corporation, which, among other things, was selling lands and water rights. On May 22, 1903, the board of directors of the Sugar Company appointed Garrett to take charge of and manage the company's affairs at Mountain Home, Elmore County, with full power to act in the capacity of general manager, as provided in its by-laws, and further authorized and instructed him "to make and execute any and all papers such and [as] water deeds, deeds or conveyances, contracts and agreements, which are necessary and pertinent under and by virtue of the Articles of Incorporation and the By-laws of the Company, and to place a copy of this resolution, duly signed by the President of the Company and attested by the seal of the Corporation, on file . . . . at Mountain Home, Elmore County, Idaho." This resolution was signed by the president, the corporate seal was affixed thereto and it was recorded in Elmore county on December 7, 1904, at the request of Garrett.

Swartwout lived in North Dakota and was induced to come to Mountain Home, for the purpose of buying land, by one Browning, an agent of the Sugar Company. Arriving at Mountain Home he met Garrett. We quote from his testimony on direct examination, as follows:

"Q. Did you have any dealings with Mr. Garrett as representing that company at that time? In 1906? A. Yes, sir.

"Q. Did your dealings refer any way to the property in question in this suit? A. Yes, sir.

"Q. How was your attention first directed to that property? A. He had promoter thru the country, one Browning came to our town selling Sugar Beet land and I got to talking with him.

"Q. Was this in North Dakota? A. Yes, sir.

"Q. After you came to Mountain Home, Idaho, when and how was your attention directed to the property in question in this suit? A. I came here and saw Mr. Garrett and saw Mr. Browning here.

"Q. Did Mr. Garrett have anything to say about this particular ten acres in controversy? A. Said he had ten acres he would like to sell me.

"Q. Did you look at the property? A. I did.

"Q. Who went with you? A. Mr. Garrett went out in the buggy and Mr. Browning and I walked out and walked back."

On March 28, 1906, Garrett gave Swartwout the Sugar Company's bond for a deed, signed and acknowledged by himself as secretary, which was filed for record by Swartwout March 29, 1906. On February 6, 1907, Garrett gave Swartwout the company's warranty deed, signed and acknowledged by himself as secretary, which was filed for record by Swartwout March 5, 1907. On April 15, 1907, Niblack deeded the property to Garrett. On July 10, 1908, the Lumber Company recovered judgment against Garrett in the district court. On September 8, 1908, one Norell docketed in the district court a judgment which he had obtained against Garrett in the probate court. On June 3, 1909, the property was sold on execution, under the Norell judgment, to respondents, Meserole and Smith, and on June 3, 1910, they received a sheriff's deed to the property. On June 11, 1910, the property was sold on execution, under the Lumber Company's judgment and bid in by the Lumber Company, and on July 12, 1911, the latter received a sheriff's deed therefor.

Clara Ludell Smith, one of the respondents, some time in 1908 was employed by her father, who was recorder of Elmore county, in the office as deputy, and continued to work in that capacity, at least until the date of the trial. During this time she bought a tax sale certificate to the property, then sent notice to Swartwout, who came in and redeemed, paying her the amount of the tax, interest and penalty. Swartwout received his first notice as to the true condition of the title when he finally procured an abstract of title, long after he had taken the deed of the Sugar Company from Garrett.

Meserole and Smith cannot claim as *bona fide* purchasers as against Swartwout, for they had actual notice of his bond for a deed, and also his deed. No one, who takes with notice

of outstanding claims or equities, can successfully set up the claim of *bona fide* purchaser. Nor can they claim as *bona fide* purchasers as against the Lumber Company, for they had constructive notice of the latter's judgment, which was a prior lien. The sheriff's deed to the Lumber Company effectually wiped out their legal title. They were left with no rights as against Swartwout, and with a mere right to redeem as against the Lumber Company. Since they did not redeem they stand solely on their pretended legal title, and may be eliminated from further consideration in this case, as the legal title stands in the Lumber Company.

But the latter is equally precluded from claiming as a *bona fide* purchaser; first, because of the constructive notice of Swartwout's interest imputed from the record of his bond for a deed, and deed; and again, for the reason that it merely credited the amount bid at the execution sale on its judgment. This was not a valuable consideration for it amounted to nothing more than a cancelation, *pro tanto*, of a pre-existing indebtedness. (*Land v. Hea,* 20 Ida. 250, 118 Pac. 506.) While there is respectable authority to the contrary, we are constrained to follow the rule hitherto announced by this court in the latter case. Nor can it be regarded as an irrevocable consideration for, since the Lumber Company took only the legal title, subject to Swartwout's equities, its judgment against Garrett could be revived. (Sec. 4498, Rev. Codes.) A purchaser who parts with a consideration neither valuable, nor irrevocable, is not a *bona fide* purchaser. (2 Pom. Eq. Jur., secs. 745–751.)

It follows that the Lumber Company received, under its execution sale, only such interest as Garrett actually had in the property. If Garrett, under the circumstances, would be estopped to question Swartwout's title, then the Lumber Company is likewise estopped. If Garrett's title is impressed with a trust in favor of Swartwout, then the Lumber Company's title is impressed with the same trust. (39 Cyc. 562, note 40.)

Garrett was not only acting as secretary and general manager of the Sugar Company when the bond for a deed and

the deed were given by that company to Swartwout and signed and acknowledged by Garrett, as secretary, but the evidence above quoted conclusively shows that in addition to his official capacity as secretary he was acting in the further representative and fiduciary capacity of agent in inducing Swartwout to buy the land from the Sugar Company. This evidence is sufficient to work an estoppel against Garrett and in favor of Swartwout. While there are some authorities to the contrary, the weight of authority is that a deed made in representative capacity estops the grantor. (16 Cyc. 712.)

Garrett took title in himself only two months after executing, as secretary, the Sugar Company's deed to Swartwout. There being no evidence to the contrary, it must be conclusively presumed that he was still secretary when he took title from Niblack. But as between Garrett and Swartwout, whom he had induced to purchase the land and to whom he delivered the Sugar Company's warranty deed therefor, it is immaterial whether he was still secretary, when taking title in himself. His conduct has forever estopped him from questioning Swartwout's title or the right of the Sugar Company to convey it.

The principle, so far as Garrett's acts as secretary were concerned, was stated in *Battery Park Bank v. Western Carolina Bank,* 138 N. C. 467, 50 S. E. 848, 849, as follows: "These facts present every element of an equitable estoppel against the assertion of any lien or encumbrance on the property in favor of the claimant, Campbell. He conveys the title to the cigarette company, for full value, by deed containing a covenant that the same is free from any and all encumbrances. True, this was a conveyance by the corporation, and therefore is not an estoppel by deed against Campbell, as an individual. *But he signed the deed for the company as its president, and to that extent he was an actor in the matter, and this covenant that the property is free from encumbrances amounts to a representation by him that this is true.*" (Italics ours.) A similar principle is announced in *Carothers v. Alexander,* 74 Tex. 309, 12 S. W. 4–12. A case more nearly

in point on the facts is, *Central Coal & Iron Co. v. Walker's Exrx.*, 24 Ky. L. Rep. 2191, 73 S. W. 778. In that case, Walker, as president of the corporation, conveyed its entire realty to a trustee to secure a debt and then acquired, as an individual, an outstanding interest. The corporation then conveyed its equity to a second company which assumed the debt. It was held that Walker was estopped to set up his individual interest as against the second company, the court saying: "An officer of the corporation cannot acquire an interest in land in the possession of the corporation so as to divest the possession of the corporation . . . . But even if we are wrong on this proposition, *it is perfectly clear that Walker and his heirs at law are estopped from asserting claim* to any part of this tract of land in the hands of the Central Coal Company, *after he had himself, as president, conveyed the entire tract of land* to Murray in trust to secure the payment of the bond issued by the company, which the Central Company thereafter assumed to pay." (Italics ours.) It is clear that in the latter case the decision does not rest upon the fact that Walker was still acting as the president of the company when he sought to acquire an interest in the property for himself.

Nor is it any answer to say that Garrett was merely acting as an officer of the company or in his official or ministerial capacity. "No one should be permitted to escape personal liability for fraud practiced by himself, or in connection with others, upon another, in his or their official character of president, director, or secretary of a private corporation, upon the ground that they were acting for the corporation. To claim exemption on the ground of official responsibility, or that the fraud was committed for the benefit of the corporation, is equivalent to claiming that the corporation is liable for the fraud of its officers, and the officers themselves not liable. As was said in *Hempfling v. Burr*, 59 Mich. 294, 26 N. W. 496, "This is a very singular result, and one which is too unreasonable to bear consideration." *(Bank of Atchison County v. Byers*, 139 Mo. 627, 41 S. W. 325–333.) To permit Garrett to assert his title would not only work a

fraud upon Swartwout, but would operate to make the Sugar Company guilty of a fraud arising out of transactions handled by Garrett while standing in a fiduciary relation to the company.

But we are further of the opinion that there are sufficient facts in this record to raise an estoppel against Garrett, even though the fact that he acted as secretary for the Sugar Company should be eliminated. In his capacity as agent for the company he induced Swartwout to believe that the land belonged to the company and with one of his agents, Browning, took Swartwout to the land and closed the deal with him, still in that belief, and delivered the company's warranty deed to him. This is sufficient to raise an estoppel against Garrett by conduct. "A strong case of estoppel is made out when by conduct or representation an owner encourages another to believe that a third person is the owner of land, and thereby induces him to purchase. . . . . A difference is recognized by some of the authorities between mere silence and encouragement. In the latter case, the owner's representations or conduct will stop him though he may have been ignorant of his title, for though there may have been no fraudulent intent, yet the assertion of his title would operate as a fraud, in the same manner as if there had been a fraudulent purpose." (10 R. C. L. 781; *Kirk v. Hamilton*, 102 U. S. 68, 26 L. ed. 79.)

Where an agent induced action "in reliance upon express or implied representations of authority, the agent and not the other party should assume the risk. Of these two, the agent is the one who takes the initiative; he is usually in the better situation to know of the existence of the authority, and where he undertakes, either expressly or by implication, to induce action, in reliance upon its existence, he would seem to be the party upon whom the risk of its nonexistence should fall." (1 Mechem on Agency, sec. 1362.)

It follows that whatever interest or title Garrett took subsequent to Swartwout's deed became immediately impressed with a trust for the benefit of Swartwout, and that when the

Lumber Company bid in the property on its execution sale, with notice, it received and could receive, under the circumstances, only such title and interest as Garrett had, and must be said to have taken the legal title in trust for Swartwout, and subject to every element of estoppel that could be urged against Garrett.

The findings and the judgment, quieting title in respondents, Meserole and Smith, are clearly erroneous. The judgment is reversed and the trial court directed to prepare findings of fact in accordance with the views herein expressed and to enter judgment, quieting title in appellant, Swartwout, who is awarded his costs on this appeal. The other parties to the appeal must pay their own costs.

Morgan, J., concurs.

Rice, J., concurs in the result.