(No. 6143.   December 31, 1934.)

J. W. REID, as Executor of the Estate of W. A. ATKIN, Deceased, Plaintiff and Respondent, v. R. I. KEATOR, Defendant and Appellant.

J. W. REID, as Executor of the Estate of W. A. ATKIN, Deceased, Respondent, v. SPOKANE AND EASTERN TRUST COMPANY, a Corporation of the State of Washington, CORA D. REEDER, as Trustee of the CHAS. G. REEDER ESTATE, CORA D. REEDER and HOBART M. PERINGER, Defendants, and R. I. KEATOR, Defendant and Appellant.

[39 Pac. (2d) 926.]

James F. Ailshie and Robert Ailshie, for Appellant.

Ezra R. Whitla, Emery Knudson and Kenneth K. Branson, for Respondent.

KOELSCH, D. J.—The two above-entitled actions were by the trial court consolidated, tried as one action and determined by one judgment.

They were brought by the plaintiff, W. A. Atkin, against the appellant R. I. Keator for the purpose of establishing plaintiff's ownership of certain lands, and of certain leases on Indian lands, all situate in Boundary county, Idaho.

The plaintiff also asked that a trust be declared in his favor as to said leases, and as to any of said lands the title whereof is held by the said defendant or for which the contract of purchase runs in the defendant's name; that said lands be partitioned, that an accounting be had, and that plaintiff be decreed to have a lien for any amount found due him from the defendant, on lands that may be partitioned to defendant, and that, on nonpayment of such

lien, the defendant be compelled to convey said property to plaintiff.

Plaintiff also asked for, and the trial court did appoint, a receiver of all of the property of the parties involved in these cases.

Issues were joined on nearly all of the material allegations of plaintiff's complaint, the consolidated case was tried by the court without a jury, findings of fact and conclusions of law were made, upon which findings and conclusions judgment was given for the plaintiff.

By this judgment the court decreed the plaintiff's ownership of all of said property and sustained his contention of a trust, and contingently ordered the appellant Keator to convey all of said property to the plaintiff.

The court also compelled an accounting and gave to the appellant Keator a fixed time within which to pay the amount found due from him in order to be restored to his undivided interest to said property, and reserved jurisdiction of the case to make partition of said property in the event of payment by appellant within the time fixed.

Of the defendants named in said complaints, the said Keator alone has appealed but has appealed upon the judgment-roll only; the plaintiff also has appealed from certain parts of the decree.

Since his appeal, the plaintiff, W. A. Atkin, has died, and his administrator has been substituted as respondent. It will, however, be convenient, and in the interest of clarity of statement herein to refer to the parties as plaintiff Atkin and appellant Keator.

There being no transcript of the evidence or bill of exceptions containing any of said evidence, this court is bound to presume that the evidence introduced upon the trial is sufficient to justify the findings. (*Anderson v. Walker Co.*, 38 Ida. 751, 225 Pac. 144; *Hazard v. Cole,* 1 Ida. 276.)

The findings are voluminous, involved and somewhat ambiguous, but the facts necessary to a decision upon these

appeals, and which may be fairly deduced from such findings, are as follows:

In the year 1929, appellant, Keator, interested one Hobart M. Peringer and the decedent, W. A. Atkin, in a project to buy and reclaim overflowed swamp-lands in Boundary county, some of which lands were owned by or stood in the name of the defendant Spokane and Eastern Trust Co. and Cora D. Reeder as trustees of the estate of Chas. G. Reeder, deceased, and said Cora D. Reeder, personally. At that time said Atkin, a second cousin of Keator's, was about 71 years of age, and resided at Republic, Washington. The said Keator, an attorney at law, resided in and practiced his profession at Pendleton, Oregon, but during the negotiations for the purchase of said lands moved to and took up his residence in Bonners Ferry, Idaho. It was agreed between the three that the venture was to be a joint enterprise in which each of the parties thereto should be equally interested, and should contribute equally towards the purchase price of lands by them bought, and towards the expense of reclaiming the same, and that Keator was to draw all contracts, conveyances, etc., and generally to look after matters of law involved in the joint enterprise, and to do so without charge; in fact none of the parties was to make any charge for personal services.

Thereupon the parties negotiated for and bought the lands, comprising 600 acres, from the Spokane and Eastern Trust Co. and Cora D. Reeder, as trustees, and Cora D. Reeder, individually, for the sum of $8,600, under a contract requiring present payment of $1,000, and the remainder in deferred instalments, the preparation of such contract being left with and entrusted to the said Keator. Keator accordingly drew such contract, but instead of naming the three persons interested as grantees or vendees therein, he took such contract in his own name.

The parties also negotiated for and bought from one W. H. Cowles a tract of 320 acres for the sum of $5,000, under a like contract requiring a down payment of $1,000, and the remainder in deferred instalments. This contract

names the plaintiff W. A. Atkin and the appellant R. I. Keator as vendees. Another tract of land embracing 200 acres was by the parties bought from J. A. Earley for the sum of $5,000 under a contract requiring a cash payment of $500, which latter contract, like the Reeder contract, the appellant Keator, without the knowledge or consent of the other two parties to the enterprise, took in his own name as grantee. However, neither Peringer nor Keator having the necessary money with which to pay their shares of the down payments required under said contracts, such payments were, at their request, advanced by the plaintiff Atkin, who placed $2,500, the amount necessary for such payments, into the hands of Keator, who paid $1,000 thereof to the Spokane and Eastern Trust Co., $1,000 thereof to W. H. Cowles, and $500 thereof to J. A. Earley, as initial payments under the respective contracts.

After the purchase of said lands, the parties entered into a contract for the purchase of a further tract from one W. J. Buchanan, for the sum of $4,000, and requiring an initial payment of $100, which contract was taken in the names of Atkin and Keator, which initial payment was likewise furnished and advanced by the plaintiff Atkin.

It also appears that adjacent to and interspersed between the lands thus contracted for by the parties, there are certain Indian lands, that is, lands held by the federal government in trust for Indians, and that, in order to construct the diking system by which it was proposed to reclaim the lands acquired by the parties, it was necessary to construct part of such system across said Indian lands, and that the system of dikes constructed reclaims not only the lands contracted for by these parties, but some of said Indian lands as well. This required that such Indian lands should contribute to the cost and expense of the construction of the reclamation system, and, as these lands are not subject to taxation, it was necessary to obtain the consent and the cooperation of the federal government. Furthermore, the appellant Keator and the said Peringer, even before they had enlisted the plaintiff Atkin in the enterprise, had

planned as a part of such venture to cultivate and farm all lands that should be reclaimed by the proposed diking system, as one gigantic, or large-scale farm, and, in furtherance of such plan, had made application to the Federal Indian Agency for leases on all of such Indian lands. After Atkin had joined the enterprise, it was agreed among them that these leases should be secured for the joint benefit of all three of them; but, under the representations made by Keator that the Indian agency desired to lease in the name of one party only, the leases were secured and taken in the name of Keator. However, the plaintiff Atkin and the said Peringer assisted Keator in securing said leases, and to furnish the bond required of Keator by the government for the performance by Keator of the terms of such leases.

Having secured these several contracts for the purchase of said lands, and the leases for the Indian lands, the parties entered into possession of said lands, and improved, cleared, cultivated and farmed the same, and commenced to construct the projected reclamation system. However, because neither Peringer nor Keator had the money necessary to carry on such operations, they requested Atkin to advance the same under an agreement that he should be repaid out of the money to be paid by the government as its share of the cost of reclaiming the Indian lands; and, further, that he, Atkin, should farm the lands and have and retain the crops grown thereon until the net proceeds thereof, together with the money received from the government, should have repaid him in full.

Thereafter, the exact time not appearing, the said Peringer withdrew from the said joint venture, and sold his interest therein to the remaining two for the sum of $1475, which purchase price, and the whole of it, was furnished and paid by the plaintiff Atkin.

In short, with the exception of about $75 paid by Keator for certain leases of Indian lands, all money employed by said parties in the carrying out of said joint enterprise, that required for construction of the reclamation system and the carrying on of the farming operations, as well as that re-

quired to pay the purchase price of said lands, and aggregating the sum of $38,945.54, was advanced by the plaintiff Atkin.

Against this, the only money ever repaid to the plaintiff Atkin is the sum of $7,533.41 by him realized as net proceeds from crops raised and produced on said lands during the time he was carrying on the farming operations. These farming operations were, under the agreement hereinbefore referred to, carried on by Atkin for the years 1930, 1931 and to the spring of the year 1932, at which latter time Keator, over the objections and against the protests of Atkin, excluded the latter therefrom and took over to himself the management of all of the said property, and conducted the same until in the fall of said year. In the fall of the year 1932 the plaintiff learned that whereas theretofore the appellant Keator had acknowledged the joint ownership of all of said property, he was now asserting individual ownership of the same and claiming that Atkin had no interest therein, and that Keator was demanding deeds to himself of the lands purchased under contract, and was appropriating to his own use the crops and the personal property belonging to the joint enterprise.

When plaintiff Atkin learned of these claims and acts on the part of Keator, he, on August 16, 1932, commenced an action for the purpose of establishing his interest as owner of said property, and to have the court declare a trust as to all of said property in his favor; and, on the fourteenth day of September, 1932, Atkin commenced a further action against Keator, again setting up his interest in and to all of said property, and asking that a receiver be appointed to take charge of the same.

It is these two actions that were consolidated by the trial court, and from the judgment rendered in which consolidated action both parties have appealed.

In these findings, and in its decree, the trial court concludes and adjudges that the plaintiff Atkin is the owner of an undivided one-half of all of the lands and other property acquired by the joint enterprise, and that by reason

of the facts found, and particularly by reason of the fact that Atkin paid all of the purchase price of said lands, and all expenses incurred in the reclamation of the same, a trust resulted under which all of said property held by the defendant Keator, by virtue of any contract or conveyance to him, or by virtue of his having taken possession thereof, is so held by Keator in trust for the two parties of this joint venture.

And the court decreed that the plaintiff Atkin was entitled to receive and to have and to hold the title to all of said property unless the defendant Keator should pay his share, fixed at one-half of the net amount advanced by plaintiff, computed as $15,696.06, with interest thereon at the rate of six per cent per annum from September 14, 1932, the date of the commencement of plaintiff's second action, and gave appellant Keator to and until December 31, 1934, in which to make such payment. The court decreed further, that if the appellant made such payment within said time, he should then be adjudged owner of an undivided one-half interest in said property, and the court specifically retained jurisdiction of the action for the purpose, in case Keator did pay within said time, of making partition of said lands and property between the parties.

The trial court, however, also decreed that if the defendant Keator failed to make such payment within the time fixed, that all of said property should thereupon belong to the plaintiff Atkin, and be transferred to him, and decreed that the appellant Keator should thereupon execute the proper deeds, conveyances and bills of sale necessary to so transfer all of said property to the plaintiff, and decreed that if Keator should fail, neglect or refuse so to do, that the clerk of said court be appointed court commissioner with authority to make the proper conveyances.

The trial court made further findings relating to the creation of a drainage district, the receipt of moneys from the federal government and the disbursement thereof, and made detailed provisions as to further expenditures necessarily incurred during the time allowed Keator in which to make

his election under the option granted to him, and made and entered its interlocutory decree making temporary partition of the property of said enterprise, which findings and decree we do not deem necessary to consider in the determination of this appeal, except only the finding that none of the money paid by the federal government to the drainage district organized by the parties, as the government's share of the cost of reclaiming the said Indian lands, was ever paid to the plaintiff Atkin.

Both parties have appealed from the decree entered.

The respondent appeals from that part of the court's decree allowing interest to the plaintiff Atkin only after September 14, 1932, and from that part of the decree permitting the appellant Keator to remain in possession of part of the property involved to December 31, 1934.

The court's decree fixing September 14, 1932, as the time from which respondent is entitled to interest is hereinafter approved, while the lapse of time has obviated the necessity of making any finding on the appeal as to the second ground above stated.

The appellant Keator specifies and relies upon eleven assignments of error:

The first three of these relate to the court's action in overruling appellant's demurrers to plaintiff's amended complaint; the fourth specification assigns as error the court's alleged failure to make findings on all issues tendered by appellant's answers and affirmative defense, and particularizes such issues; the fifth specification attacks the findings as indefinite, uncertain and ambiguous, and challenges their sufficiency to support the judgment; the sixth specification assigns as error the court's conclusion that the facts gave rise to an implied trust, and in not finding that the indebtedness, if any, due from defendant to plaintiff, was an ordinary liability; the seventh specification claims error because the court did not find that any money due to plaintiff was due him from the drainage district, and not from the defendant, and in decreeing that all titles to land involved in the case should be conveyed to plaintiff; the eighth and

tenth assignments specify as error the court's refusal to decree partition; the ninth assignment specifies as error that part of the court's decree ordering the appellant Keator to pay the sum of $15,696.06, and on failure of payment, to convey all his right to the property involved to the plaintiff; while the eleventh assignment charges error for failure to decree the amounts paid and those still due from the drainage district, and separately, to find the amount expended in farming operations.

Taking up first the assignment that the trial court failed to make findings on all the issues tendered by the answers and affirmative defense set up by the defendant, it will be found on comparison of the specific issues on which it is contended no findings were made with the findings actually made, that, as to some of such issues, the findings impliedly, if not directly, dispose of the same.

It must be observed that the parties' respective theories of the nature or character of the enterprise involved in this action are so diametrically opposed that the adoption of one of them was necessarily a negation of the pertinency of many of the issues raised by the pleadings of the party urging the opposite theory.

Thus, for example, the finding that the venture was a joint enterprise in which each of the parties was equally interested, and that the $2,500 initial advancement by Atkin was not a loan, as contended for by appellant, is at least an implied finding that the same was not to be repaid by the issue of warrants by the drainage district thereafter organized by the parties.

Thus, also, the findings by the court that the venture embarked upon by the parties was a joint enterprise is an effective denial of the contentions made by appellant that some of the lands and some of the personal property acquired by the parties in the course of the enterprise were his individually, or that any of the contracts entered into in the furtherance of the enterprise were made upon the credit and obligation of the appellant only, and no specific findings on such issues were necessary. (*Matthews v. Coate,*

17 Ida. 624, 106 Pac. 990; 64 C. J. 1235, sec. 1079.) Nor is the appellant in position to claim error for the court's failure to make specific findings upon these issues, if findings thereon were necessary. Not having brought before the court any of the evidence introduced upon the trial, we must presume that none was introduced in support of such of the allegations of the appellant's answer and affirmative defense concerning which no findings were made.

Moreover, the record before us shows that the appellant made no request for specific findings on said issues. Under such circumstances, it will be presumed that findings on such issues, if made, would have been against the appellant. (*Gould v. Hill,* 43 Ida. 93 (110), 251 Pac. 167.)

In the case of *Chamberlain v. Woodin,* 2 Ida. 642, 23 Pac. 177, this court said: "By numerous decisions it has been held that findings must be made upon all material issues, but even this ruling is modified in various ways; as that 'when the court fails to find on a material issue, . . . . judgment will not be reversed if the finding must have been adverse to the appellant.' "

We have carefully examined each of the issues on which it is contended by appellant that a finding should have been made, and express it as our opinion that because the trial court adopted the plaintiff's theory of a joint venture by the parties, and rejected the appellant's theory that the money advanced by Atkin was merely a loan, the findings on the issues pointed out by appellant, if made, would have been adverse to appellant.

The serious question raised by appellant's assignments of error is that urged under assignment No. VI, namely, that the court erred in concluding that a trust arose by reason of the transactions found, and that the indebtedness from defendant to plaintiff, if any, is not an ordinary indebtedness, that is, that it did not constitute the ordinary relation of debtor and creditor. In our opinion, a solution of this question is decisive of all remaining issues involved in or raised by this appeal on the part of Keator.

Summarized, the facts found by the court, and which are pertinent to the question whether any sort of trust arose therefrom by implication of law, may be stated as follows:

The three parties, Atkin, Peringer and Keator, entered upon a joint venture to purchase, reclaim and farm certain overflowed swamp-lands, in which enterprise each was to be equally interested, was to contribute an equal part, and presumably to share equally in any proceeds or profits. Because Keator was a lawyer, to him was entrusted the preparation of all contracts, conveyances, and the looking after of all questions of law involved or arising in the course of the carrying out of the joint enterprise. Moreover, he was a distant relative of Atkin's, who was a man 71 years of age, and who, by reason of his age, his relationship to and confidence in Keator, trusted and relied on Keator to honestly perform the part of the enterprise confided to him. But Keator was recreant to his trust. Instead of making all contracts for the purchase of the lands in the name of the three joint adventurers, he, without informing Atkin, made some of them in his own name, and thereafter took the title to lands therein involved in his own name. He took the leases on the Indian lands which the parties secured as part of the joint enterprise in his own name after having represented to Atkin that the Indian commissioners would lease in the name of one person only.

Neither Keator nor Peringer having the money required to pay the initial or down payments specified in such contracts of purchase of said lands, they requested Atkin to advance the same, which he did; and thereafter, in order not to default in the instalments of purchase price specified in said contracts, and to protect the said lands from being lost to the parties, Atkin, under the belief that all of the parties to the joint enterprise were equally interested therein and were equal owners of all property by the enterprise acquired, paid the full balance of the purchase price of said lands.

In fact, it was under this belief on the part of Atkin that he paid all other expenses, and advanced all of the

money used by the said enterprise, in the acquisition of said lands and of certain personal property, and in the construction of the drainage or diking system and the reclamation, breaking, clearing and farming of said lands; and it was under this belief that Atkin bought out the interest of the said Peringer, buying the same for and on behalf of the joint enterprise, but paying for the same with his own money.

The only money that the said Keator contributed to the enterprise was the sum of about $75 paid as rental of the Indian lands, while the total amount contributed by Atkin, less the sum of $7,533.41 realized by him out of the farming operations, is $31,392.13.

Such was the status of the joint enterprise when in the fall of 1932 the said Keator for the first time denied the joint character of the same, and claimed that all of said property was his and denied that Atkin had any interest therein, and took possession of the same and was in the act of converting the crops and other personal property to his own use, when stopped and prevented by Atkin's action for the appointment of a receiver.

That facts such as the foregoing give rise to an implied trust is thoroughly well settled by the authorities.

This court, in line with the uniform holding of the courts of other states, is committed to the principle that, "where one has acquired legal title to property to which another has the better right, equity will convert him into a trustee of the true owner and compel a conveyance of the legal title." (*Harvey v. Deseret Sheep Co.,* 40 Ida. 450, 234 Pac. 146; *White v. Whitcomb,* 13 Ida. 490, 90 Pac. 1080; *Whitcomb v. White,* 214 U. S. 15, 29 Sup. Ct. 599, 53 L. ed. 889.)

Accordingly, this court has frequently held that an implied trust arises by operation of law in favor of the person who advances the purchase money for the land though the title be taken in the name of another. (*Pittock v. Pittock,* 15 Ida. 426, 98 Pac. 719; *National Bank of Idaho et al. v. D. W. Standrod & Co. et al.,* 47 Ida. 93, 272 Pac. 700;

*Sherman v. Citizens' Right of Way Co.,* 37 Ida. 528, 217 Pac. 985.)

Such a trust may, however, arise from acts other than the payment by one of the purchase price of land the title to which is taken by another.

Thus, if title is acquired by artifice (*American Min. Co. v. Trask,* 28 Ida. 642, 156 Pac. 1136); or by violation of confidence and trust (*Hanger v. Hess,* 49 Ida. 325, 288 Pac. 160; *Ainsworth v. Harding,* 22 Ida. 645, 128 Pac. 92); or by fraud, actual or constructive (*Davenport v. Burke,* 30 Ida. 599, 167 Pac. 481; *Mountain Home Lumber Co. v. Swartwout et al.,* 30 Ida. 559, 166 Pac. 271).

■ Accordingly, all implied trusts are classified with regard to the nature of their origin as resulting trusts and constructive trusts, the latter often being designated as trusts *maleficio,* or trusts *ex delicto.* (65 C. J. 223, sec. 14; *Eisenberg v. Goldsmith,* 42 Mont. 563, 113 Pac. 1127; *Sieger v. Sieger,* 162 Minn. 322, 202 N. W. 742, 42 A. L. R. 1.)

■ That parties to a joint enterprise, like copartners, occupy fiduciary relations to each other, has been uniformly held by the courts.

"The relation between parties to a joint adventure is fiduciary in its character, and requires the utmost good faith in all the dealings of the parties with each other." (*Cassidy v. Hornor,* 86 Okl. 220, 208 Pac. 775, 779, 780, citing 15 R. C. L. 501; *Botsford v. Van Riper,* 33 Nev. 156, 110 Pac. 705. See, also, *Cassidy v. Gould,* 86 Okl. 217, 208 Pac. 780; *Miller v. Henderson,* 140 Kan. 46, 33 Pac. (2d) 1098; 33 C. J. 851, sec. 36.)

■ And the authorities are likewise uniform in holding that a violation by one of the parties of the fiduciary relations constitutes a fraud upon the other or others, and if any advantage is acquired by such violation, the law raises a constructive trust for the protection of the defrauded party. (*Hanger v. Hess, supra;* 65 C. J. 476, sec. 226.)

The principles and definitions laid down by the foregoing authorities applied to the facts as found by the trial court

in the present case, leave no doubt of the correctness of its conclusion and decree that an implied trust arose in favor of the plaintiff Atkin. But the trial court failed to distinguish between the kinds or classes of implied trusts, and erroneously classified the trust which it decreed herein as a resulting trust. In this the court was in error. Undoubtedly, it was by reason of this error that the court further decreed that the trustee, Keator, held the entire title to all of the property of the joint enterprise, in trust.

The agreement between the parties on entering upon the joint venture was that each participant should contribute equally thereto and be equally interested therein. It is undoubtedly true that where two or more persons jointly buy lands to the purchase price of which they contribute unequal amounts, in the absence of any different agreement they would each own an interest in the proportion that his contribution bore to the whole purchase price. (*Faylor v. Faylor,* 136 Cal. 92, 68 Pac. 482; *Madsen v. Madsen,* 35 Cal. App. 487, 170 Pac. 435; *Gerety v. O'Sheehan,* 9 Cal. App. 447, 99 Pac. 545; *Breitenbucher v. Oppenheim,* 160 Cal. 98, 116 Pac. 55; *Chambers v. Emery,* 13 Utah, 374, 45 Pac. 192.)

But such are not the facts in the case at bar. Here a joint venture was embarked upon by three persons, later reduced to two, with the distinct understanding that they were equally interested therein. The fact that one of them advanced more than his share of the outlay of money made by the enterprise did not change the relative interests of the parties. Nor did the implied trust arise out of the fact that Atkin advanced all money necessary in the prosecution of the enterprise. The trust arose by reason of the tortious act of the appellant Keator in taking the entire title to the property acquired in his own name. It is, therefore, a constructive, not a resulting, trust. (*Eisenberg v. Goldsmith, supra; Sieger v. Sieger, supra.*)

It must be borne in mind that the appellant Keator, being one of the adventurers, was authorized (after Peringer

had dropped out of the venture) to take title to an undivided half of all property acquired by the joint enterprise. Hence, the only interest he ever held as trustee was the undivided one-half belonging to Atkin. The court's decree that Keator held all of the property as trustee was therefore erroneous, and the court could not divest appellant Keator of his title to an undivided one-half of said property by the simple process of ordering him to transfer it to plaintiff Atkin in satisfaction of the sum of money found due from him to the plaintiff Atkin.

In the Oklahoma case of *McCoy v. McCoy et al.*, 30 Okl. 379, 121 Pac. 176, Ann. Cas. 1913C, 146, three parties orally agreed to buy certain lands, each to contribute one-third of the purchase price therefor. They each did contribute a certain sum, but for some reason the conveyance was made to but two of them. One of the two having sold his interest to the other, it was held that the latter held the one-third interest in trust for the plaintiff, the party whose name was omitted from the conveyance. It also appeared that the plaintiff had contributed more than one-third of the purchase price of the land; he was given a lien on the other two-thirds interest for the excess. (See, also, *Levy v. Ryland*, 32 Nev. 460, 109 Pac. 905.)

We are therefore of the opinion that the trial court should have granted partition of the property involved, which was prayed for by both parties, and impressed a lien in favor of the plaintiff Atkin, for the amount found due him, upon the property partitioned to the appellant Keator, with the right to foreclose the same. The trial court found it equitable to allow interest to plaintiff on the amount found due him from the appellant only from September 14, 1932. We approve that part of the decree upon the ground that whereas it was agreed between the parties to the joint enterprise that no charges were to be made by any of them for services performed, it is equitable to allow no interest on the money advanced by the plaintiff until he made demand for its repayment.

The decree is therefore reversed and the cause is remanded, with instructions to the trial court to enter a decree in conformity with this opinion.

Each party is to pay his own costs.

Budge, C. J., and Givens and Holden, JJ., concur.

Petition for rehearing denied.