453 P.2d 560

**Herman P. EVANS, Plaintiff-Respondent,**
**v.**
**Marguarite A. EVANS, Defendant-Appellant.**
**No. 10148.**

Supreme Court of Idaho.
April 29, 1969.

Smith, Miller & Weston, Caldwell, for defendant-appellant.

Schiller, Young & Williams, Nampa, for plaintiff-respondent.

DONALDSON, Justice.

Herman Evans, plaintiff-respondent, brought this action for divorce from his wife, Marguarite Evans, defendant-appellant, on grounds of extreme cruelty. He sought a division of the property claiming that most of it was his separate property. Marguarite Evans answered, denying the allegations of the plaintiff. She also cross-claimed for divorce and alleged that most of the property was community. Prior to the trial the court appointed a certified public accountant as master to assist the court in tracing the property and in making an accounting of the assets of the parties.

The trial court after an extensive trial, devoted almost entirely to the determination of what were the assets of the estate and their character, granted a divorce to the wife on grounds of extreme cruelty, divided the property between the parties, finding that the great majority was the husband's separate property, divided the community property equally, and granted the wife $150.00 a month alimony. The court also ordered the respondent to pay all court costs including the accountant's fee of $877.50 and attorney's fees in the amount of $1,500.-00. The wife thereupon appealed from the decree insofar as the division of the property was concerned; the amount of alimony awarded to her by the court and the amount of attorney's fees. The appellant's main specifications of error are to the following amended findings of fact made by the trial court.

"V.

"That at the time of the marriage of the parties hereto the plaintiff and counter-defendant owned a separate estate of a net value in excess of the sum of $187,-034.78; that at the same time the defendant and counter-claimant owned a separate estate of approximately $4,000.00.

"IX.

"That commencing with the marriage of the parties to the above entitled action the plaintiff loaned the credit of his separate estate to the community and that throughout the marriage said separate estate acted and was used as security for the betterment of the community; that further the plaintiff did not at any time intend that his separate estate should be considered as a gift to the community.

"X.

"That the separate estate of the plaintiff did not lose its identity as separate property, neither did said property become comingled to such an extent that it lost its identity.

"XIII.

"That the defendant and cross-plaintiff devoted 13 years of her life to the marriage between herself and the plaintiff and counter-defendant; that the plaintiff and counter-defendant has the ability to pay alimony to said defendant and cross-plaintiff until her death or until she remarries; that the sum of $150.00 per month as and for alimony is a reasonable sum to be paid the defendant and cross-plaintiff until her death or remarriage.

"XV.

"That the net value of the community estate of the parties to this action is the sum of $33,008.72 together with the household furniture and fixtures.

"XVI.

"That the said community property should be awarded to the plaintiff and cross-defendant upon the condition that he pay to the defendant and cross-plaintiff the sum of $16,504.36. That the remainder of the present estate should be awarded to the plaintiff and cross-defendant as his sole and separate property.

"XVIII.

"That the plaintiff and cross-defendant should be ordered to pay the fee of the accountant appointed in this matter in due course. That the plaintiff and cross-defendant should be ordered to pay the defendant and cross-plaintiff's attorney's fee in a reasonable sum of $1,500.00 of which $500.00 has been paid heretofore by said plaintiff and cross-defendant, the same to be paid in due course."

The appellant wife also claims that the court erred in making conclusions of law and entering judgment based on the amended findings of fact objected to.

The pertinent facts are as follows: The parties were married at Payette, Idaho, on May 9, 1954. There were no children born during the marriage. The wife was 59 years old at the time of the filing of the divorce action and the husband was 54 years of age. At the time of the marriage the husband was engaged in the automobile business, the Evans Motor Company. His previous wife had died and the decree of distribution in the estate was entered October 29, 1953. Page 1 of Joint Exhibit 1A, which was a report by the appointed master, shows that the husband's separate property was worth $202,102.76. The appellant wife had also been previously married and her separate property as set forth in the divorce decree dated July 9, 1951, was listed in Joint Exhibit 1A. At that time her separate property amounted to $28,500.00 but by the time of her marriage to the respondent it had been reduced to some $13,000.00 consisting of the household furniture, fixtures, equipment, etc., one piece of real property worth $4,000.00 and an interest in an automobile which she had purchased shortly before the marriage from the respondent. The piece of real property worth $4,000.00 was later transferred by the appellant to herself and to the respondent approximately four years after the marriage and the court found it therefore became community property. The household furnishings of the parties were divided by agreement during the pendency of the divorce action. On August 1, 1958, the respondent and appellant purchased a cattle ranch at Ola, Idaho, from Leo Marsters. The purchase price was $250,000.00, against which there was a mortgage of $106,500.00 which the purchasers assumed. The balance of the purchase price was paid by the respondent from the assets of the Evans Motor Company and two other pieces of separate property which the respondent owned.

At the time that the ranch was purchased by the parties the respondent entered into a personal property exchange agreement with Leo Marsters in which no purchase price was placed on the equipment. The agreement contained a list of farm equipment that was traded for used cars also listed in the agreement. The agreement for the sale exchange of real estate between the Evans's and Leo Marsters contained a provision which stated that it recognized that

the property involved might be the separate property of either party and it was agreed that where the names Marsters or Evans should appear it should be construed to apply in the plural or singular as the case may be. The assumption of the mortgage held by John Hancock Mutual Life Insurance Company was signed by both Mr. and Mrs. Evans. The parties operated the property until March 13, 1962. During that time the operations of the ranch were financed through the Production Credit Association. In 1959 a new ranch house was constructed and an additional mortgage of $14,500.00 was taken out by the Farmers Home Administration. The various payments on these two mortgages are set out in Joint Exhibit 1A as follows:

"PAYMENTS ON THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY MORTGAGE ON THE OLA RANCH

"After Mr. Evans commenced operations at the Ola ranch, he set up a bank account specifically for ranch operations. For a brief period of time the ranch expenses were paid from an already existing bank account that was used by Mr. Evans for his cattle trading transactions and other business income and expenses outside the scope of the Evans Motor Company. The following schedule breaks down the payments of interest and principal on the John Hancock Mortgage:

| Date | Amount | Explanation |
|------|--------|-------------|
| January 10, 1959 | 3,500.00 | Principal only, the interest payment was made by Marster. 2,000.00 of this amount came from the cattle trading account 1,500.00 from the Evans personal account. |
| January 1, 1960 | 5,150.00 | Interest only, payment from the ranch account. |
| September 29, 1960 | 3,707.90 | Principal 3,500.00, interest 207.90. Paid from the ranch account. |
| December 30, 1960 | 8,475.00 | Principal 3,500.00, interest 4,975.00. Paid from the ranch account. |
| December 26, 1961 | 8,300.00 | Principal 3,500.00, interest 4,800.00. Paid from the ranch account. |

When Mr. Evans acquired the Ola ranch he set up the financing of the ranch operations with Production Credit Association. Included in the annual budget with PCA were the above listed mortgage principal and interest payments.

During 1959 a new ranch house was constructed on the Ola ranch and an additional mortgage of $14,500.00 was taken out by the Farmers Home Administration. The following payments were made on this mortgage:

| Date | Amount | Explanation |
|------|--------|-------------|
| 1959 | 600.00 | 156.58 principal, 443.42 interest |
| 1960 | 1,104.04 | 552.38 principal, 551.65 interest |
| 1961 | 1,104.04 | 531.15 principal, 572.88 interest |

The 1960 and 1961 payments were included in the PCA Budget. All PCA and Mortgage payments so budgeted were deposited to the ranch account. The 1959 payment came from the ranch account."

On March 13, 1962 Mr. and Mrs. Evans sold the Ola ranch and acquired some property in Nampa, Idaho from Claude and Lois Ellison. The payments for the Nampa property were made as shown in Joint Exhibit 1A as follows:

## "SALE OF OLA RANCH AND ACQUISITION OF NAMPA PROPERTY

"Sale price (Ranch and Cattle) dated March 13, 1962 (Note #1) $345,000.00

Parties to contract—Herman P. Evans and Marguarite A. Evans. Claude L. Ellison and Lois Ellison.

Payable

| | | |
|---|---:|---:|
| Cash down payment | | 10,000.00 |
| Assumption of John Hancock Mortgage | | 92,500.00 |
| Assumption of FHA Mortgage | | 13,259.88 |
| Transfer of equity, Nampa property (Jim Small Place) | 165,000.00 | |
| Mortgage–Peter Johnson– Nampa property | (55,000.00) | |
| Howard Talcott Mortgage– Nampa property | (10,000.00) | 100,000.00 |
| Note for $25,000.00 plus interest on $129,240.12 before February 1, 1963 | | 25,000.00 |
| Balance at rate of $7,500.00 plus interest March 15, 1964 and each year thereafter until paid | | 104,240.12 |
| | | 345,000.00 |

Note #1   Sale included 100 head of stock cattle"

---

The trade for the Nampa property included the property in which the parties were living at the time of the divorce and it was valued at $165,000.00. The payments on the mortgages on the Nampa property were found by the master to have been made as follows:

## "Payments on Mortgages on Nampa Property

| | |
|---|---:|
| April 1, 1962, received from Ellison | 10,000.00 |
| May 1, 1962, Howard Talcott payment (10,000.00 principal 66.66 interest) | 10,066.66 |

Peter Johnson mortgage payments made.

| | | |
|---|---:|---|
| May 1, 1962 | 275.00 | (including interest) |
| June 18, 1962 | 275.00 | |
| July 1, 1962 | 275.00 | |
| August 1, 1962 | 275.00 | |
| August 31, 1962 | 5,275.00 | |
| October 3, 1962 | 250.00 | |
| October 26, 1962 | 250.00 | |
| November 26, 1962 | 250.00 | |
| December 26, 1962 | 250.00 | |
| January 31, 1963 | 250.00 | |
| February 1, 1963 | 25,000.00 | —$25,000.00 was received from Ellison at this time. |
| March 1, 1963 | 125.00 | |
| April 1, 1963 | 125.00 | |

| | |
|---|---|
| April 30, 1963 | 125.00 |
| June 5, 1963 | 125.00 |
| July 8, 1963 | 125.00 |
| August 1, 1963 | 125.00 |
| September 7, 1963 | 125.00 |
| October 1, 1963 | 125.00 . |

Johnson mortgage satisfaction dated September 30, 1963. This mortgage was paid off by a new mortgage from John Hancock for $40,000.00 on October 7, 1963. Evans received $15,000.00 plus satisfaction on Johnson mortgage. At about this time all bank accounts were closed into one account."

On April 6, 1966, the balance due on the Ola ranch of $102,334.00 was paid to Mr. and Mrs. Evans plus interest of $11,922.34 making a total payment of $114,257.14. These funds were invested as set forth in Joint Exhibit 1A as follows:

### "LOANS

Clements H. Tarp and Mamie Tarp $5,000.00. Payable $75.00 per month from May 1, 1966.

Gratton and Barnard Agency, $10,000.00. Payable $200.00 per month from June 5, 1966.

Purchased Ivan Van Warren contract from Sylvia McClain, $9,700.00. Contract balance on date of purchase was $11,300.00. Payable $1,000.00 plus interest payable October 15th each year. October 1966 payment was interest only paid December 12, 1966.

### SECURITIES

| | |
|---|---|
| May 2, 1966, Investors Variable Payment Fund Inc. 2,738,226 shares | 25,000.00 |
| May 2, 1966, Investors Stock Fund 1,133,273 shares | 25,000.00 |
| In addition, Mr. Evans purchased $1,000.00 each in variable plan for Grandchildren | 3,000.00 |
| | 53,000.00 |

### SAVINGS

On May 24, 1966, $20,000.00 was deposited with Treasure Valley Savings and Loan Association. The following withdrawals were made from this account:

| | | |
|---|---|---|
| August 11, 1966 | 6,500.00 | This money was deposited with the First Security Bank of Nampa in a savings account. |
| August 25, 1966 | 3,666.66 | This money was deposited in the checking account, included in this withdrawal was $166.66 interest paid on the savings deposit. |
| September 23, 1966 | 5,000.00 | This money was deposited in the checking account. |
| September 29, 1966 | 5,000.00 | This money was deposited in the checking account. |

The First Security Bank savings account was in existence until January 9, 1967 at which time $1,500.00 plus interest paid on the savings account of $86.66

was deposited in the checking account and on the same date the balance of $5,000.00 was transferred to a Time C.D.

In 1966 there was a conditional sales contract owing to Mr. Evans from J. Rulon Bastian. This contract was dated November 6, 1964. It arose from the sale by Exans to Bastian of an International Crawler Tractor and Bulldozer for $2,210.00 plus interest of $265.20. This tractor was purchased by Evans while he operated the Ola ranch for $5,500.00. Funds for the purchase of this equipment came from PCA."

———◆———

The accountant's report also showed that the parties during their 13 years of marriage had an income loss for every year after 1957 when they first went on the Ola ranch and that the average income for the 13 years of marriage was $2,500.00 a year.

Turning now to the appellant's first assignment of error to the effect that the court erred in making finding of fact No. V. in which the trial court held that the respondent had a separate estate in excess of $187,034.78 and that the appellant had a separate estate of $4,000.00. The master's report, Joint Exhibit 1A, clearly shows that at the beginning of this marriage the respondent had a separate estate of over $200,000.00, as set forth in the decree of distribution of the estate of his first wife. In addition the respondent testified that he had insurance policies, a personal auto, boat and motor, worth in excess of $10,000.00 and the court so found in its memorandum decision. In regard to the appellant's separate property the same exhibit, Joint Exhibit 1A, shows that in 1951, some years before her marriage that the appellant had a separate estate of $28,500.00. The testimony presented at the trial showed that the appellant had sold the $15,000.00 piece of real property to her son prior to her marriage to respondent and had also traded her automobile in on a new one just prior to the marriage. Evidence further showed that in 1960 the appellant made a gift to the community of the $4,000.00 piece of real property. This was done by a warranty deed to the appellant and to the respondent for considerations of less than $100.00. Plaintiff-respondent's exhibit No. 32. In addition, the household goods and furnishings of the parties were divided by stipulation during the course of the divorce proceedings. The findings of the trial court when based upon substantial, competent although conflicting evidence will not be disturbed on appeal. Davis v. Davis, 82 Idaho 351, 353 P.2d 1079 (1960); Clayton v. Clayton, 81 Idaho 416, 345 P.2d 719 (1959). This court finds that the evidence is substantial and competent although conflicting and therefore will not reverse the trial court's findings.

The next assignment of error is that the court erred in making finding of fact No. IX. in which the trial court found that the respondent loaned the credit of his estate to the use and betterment of the community. Testimony showed that during the period that the parties operated the Ola ranch that the operations were financed by means of a continuing loan from the Production Credit Association. The testimony of Mr. Thompson, Manager of the Production Credit Association, showed that the first loan for the operation of the ranch was made in 1959 and was not paid off until 1962. The security for the loan was one hundred head of cattle which the respondent had purchased from his separate personal checking account and farm equipment which respondent had obtained by trade for his used cars. Each year thereafter the cattle were sold and the profits applied to the repayment of the loan to the Production Credit Association and the loan was renewed for the purchase of more

cattle. See Joint Exhibit 1A, *infra*. Mr. Thompson testified that he looked to the credit of the respondent in making the loans. This court has previously held that money borrowed on the faith and credit of separate property is separate property where the separate estate continues to be the primary source of future repayment. Shovlain v. Shovlain, 78 Idaho 399, 305 P. 2d 737 (1956); Searles v. Searles, 99 Cal. App.2d 869, 222 P.2d 938 (1950); In re Ellis' Estates, 203 Cal. 414, 264 P. 743 (1928); Stewart v. Stewart, 113 Cal. App. 334, 298 P. 83 (1931); In re Binge's Estate, 5 Wash.2d 446, 105 P.2d 689 (1940). Furthermore, there is no indication that the respondent at any time intended that the separate estate or its use as security should be considered as a gift to the community. In the agreement whereby the parties obtained the Ola ranch there was the clause that the property involved might be the separate property of either party as previously noted in this opinion and the warranty deed which transferred the property to the parties contained an "Acknowledgement of existence of separate estate and release of community interest in property" signed by the appellant. (Plaintiff's Exhibit 10A). While the trial court found that these two documents were not binding on the appellant, they did show that the respondent never intended that a gift be made to the community. This court agrees with this conclusion and finds no error in the trial court's finding of fact No. IX.

■■ The next assignment of error has to do with finding of fact No. X in which the trial court found that the separate estate of the respondent did not lose its identity as separate property and did not become commingled to such an extent that it lost its identity. It is true that there is a presumption that property acquired during marriage is community but only when it is impossible to trace the source of the specific property. Further, so long as the sep-

arate property of either spouse is identifiable and traceable, commingling of such property with community property does not convert the separate property into community property. This court in Stahl v. Stahl, 91 Idaho 794, at pp. 797 and 798, 430 P.2d 685, at pp. 688 and 689 (1967), said:

"When the source of the property can be established with reasonable certainty and particularity as the separate property of one or the other, the effect of such presumption [that of being community] is overcome, and the property so traced retains its character as separate property." (cases cited)

The court further said in the same case:

"So long as the separate property of either spouse is identifiable and traceable, commingling of such separate property with community property does not convert the separate property into community property."

In this case the court appointed a certified public accountant to review the financial dealings of the parties and to trace the source of the various properties. He devoted over 71 hours in detailed examination of the books, records and all documents relating to the assets of the parties. His report was admitted in evidence on the stipulation of both counsel at the trial as Exhibit 1A. Almost the whole trial was devoted to the tracing of these properties. The court in its memorandum decision stated that the separate estate of the plaintiff (respondent) did not lose its identity as separate property, neither did it become commingled to such an extent that it lost its identity. The trial judge stated that the defendant's separate estate at the time of the marriage was so negligible that there was nothing to become commingled with and that the net profits of the community over the term of the marriage was only $2,382.91 a year which included profits from the sale of separate property. He based this on the

report of the accountant (Joint Exhibit 1A) which showed the income of the parties over the years, including capital gains from the raising of cattle. It is as follows:

|  | "Income Taxes paid | Income per Federal Return | Untaxed Portion of Capital Gains | Total Income |
|---|---|---|---|---|
| 1954 | 899.24 | 6,201.90 |  | 6,201.90 |
| 1955 | 2,242.86 | 10,659.03 |  | 10,659.03 |
|  | (2,167.67) |  |  |  |
| 1956 | 2,648.05 | 12,075.66 |  | 12,075.66 |
|  | (1,815.27) |  |  |  |
| 1957 | 2,680.40 | 12,037.12 |  | 12,037.12 |
| 1958 | 102.64 | 2,016.88 | 209.98 | 2,226.86 |
| 1959 | 10.00 | (19,939.67) |  | (19,939.67) |
| 1960 | 10.00 | (14,677.49) | 1,078.42 | (13,599.07) |
| 1961 | 489.55 | 624.56 | 3,011.78 | 3,636.34 |
| 1962 | 10.00 | 3,376.05 | 23,211.64 | 26,587.69 |
| 1963 | 105.80 | 1,668.18 | 552.80 | 2,220.98 |
| 1964 | 108.40 | (8,385.22) | 859.22 | (7,526.00) |
| 1965 | 74.80 | (2,205.40) | 538.31 | (1,667.09) |
| 1966 | 74.80 | 2,099.98 | 1,437.68 | 3,537.66 |
|  | 5,473.60 | 5,551.58 | 30,899.83 | 36,451.41 |

Net Taxes Paid      5,473.60

Net Income After Taxes      30,977.81

($2,382.91 average yearly income for 13 years after taxes.)"

---

The income from 1954 to 1958 was from the Motor Company. The Motor Company was separate property of the respondent but the income was community. I. C. § 32–906. The income from 1958 on was also community except for the capital gains. The capital gains was realized from the sale of cattle which were originally separate property. The respondent started with 100 head in 1958. He would sell cattle each year and reinvest in more cattle. Thus these cattle were "proceeds from the sale" and therefore separate property. I.C. § 32–903. The only exception was in 1961 when calves and bulls were sold which had been raised on the ranch. These increases should be considered as rents and profits and so community property. See F. Jacobs, The Law of Community Property in Idaho, pp. 48, 49 (2d Ed. 1943), and cases cited. The trial judge treated all income as community property to offset any improvements made on the separate estate. This court finds no error in the way and manner in which the district court considered the income of the parties. The judge further stated that rents and profits of a husband's separate property are community property only to the extent that they are net rents and profits, citing Malone v. Malone, 64 Idaho 252, 130 P.2d 674 (1942). The court then went on to say that the annual income would have been more than used up in living expenses. The court can find no error in the manner in which the trial court considered and treated the separate and community property of the parties and the trial court's finding is approved.

Appellant's attorney in his argument criticized the court's findings of fact since it did not separately list each piece of property as separate or community although finding the specific value of each piece of property and finding a total value

for the separate property and for the community·property. The appellant made objections to the amended findings of fact and conclusions of law but the record does not show that they were ever noticed up for argument and final disposition. If no more specific findings are requested no reversible error is presented. Anderson v. Lloyd, 64 Idaho 768, 139 P.2d 244 (1943); Gould v. Hill, 43 Idaho 93, 251 P. 167 (1926); Reid v. Keator, 55 Idaho 172, 39 P.2d 926 (1934); cf. Hammond v. Hammond, 92 Idaho 623, 448 P.2d 237 (1968). Furthermore, findings of fact must be liberally construed. Anderson v. Lloyd, *supra*; Fouch v. Bates, 18 Idaho 374, 110 P. 265 (1910); Cleveland v. Mochel, 48 Idaho 37, 279 P. 410 (1929); Gem State Lumber Co. v. Galion Irrigated Land Co., 55 Idaho 314, 41 P.2d 620 (1935).

The next two assignments of error are that the appellant is entitled to a larger amount of alimony and that the amount of attorney's fees awarded is inadequate. The allowance of alimony, attorney's fees and court costs are a matter of discretion of the trial court and although reviewable on appeal will not be reversed unless there has been a clear abuse of discretion. Nichols v. Nichols, 84 Idaho 379, 372 P.2d 758 (1962); Malone v. Malone, *supra*; I.C. §§ 32–704, 32–706; see Hammond v. Hammond, *supra*. The record indicates that the appellant worked prior to her marriage, was presently working at the time of the divorce and is in good physical health. In addition the appellant will shortly be eligible for social security benefits. In regard to the court's finding as to the amount of reasonable attorney's fees, it first must be noted that no evidence was presented at the trial on attorney's fees. The court determined that $1,500.00 was reasonable and in addition required respondent to pay the master's fee in the amount of $877.50. The court finds no abuse of discretion in the amount of the award of alimony made by the trial court or in the awarding of attorney's fees.

The next two assignments of error made by the appellant have to do with the find-

ings as to the amount of the community property and the equal division of it between the parties. These matters have already been disposed of by the discussion of the previous assignments of error.

After careful consideration of the remaining assignments of error we conclude that the trial court committed no reversible error in the trial of this cause. Judgment is affirmed. Costs to respondent.

McQUADE, Acting C. J., McFADDEN and SPEAR, JJ., and FELTON, District Judge, concur.