526 P.2d 844

Don J. SIMPLOT, Plaintiff-Respondent,

v.

Sharidon Lee SIMPLOT, Defendant-Appellant.

No. 11112.

Supreme Court of Idaho.

June 13, 1974.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-appellant.

Clemons, Cosho, Humphrey & Samuelsen, Boise, for plaintiff-respondent.

McQUADE, Justice.

This action arises out of a judgment and decree of divorce. The plaintiff-respondent, Don J. Simplot, and the defendant-appellant, Sharidon Lee Simplot, were married on June 28, 1953. Since 1953, the respondent has been employed by J. R. Simplot Company and its various subsidiaries and the appellant has maintained the family household. The respondent instituted a divorce action on the ground of extreme cruelty and on November 19, 1971, the district court entered a judgment and decree of divorce which was amended on February 23, 1972. The appellant appeals from the amended judgment and decree of divorce and the supporting findings of fact and conclusions of law to this Court. The appellant's assignments of error deal with the trial court's classification and award of specific property and the adequacy of alimony and child support.

The appellant contends that the trial court erred in not classifying as community property the respondent's proportionate share of J. R. Simplot Company's retained earnings that were accumulated during the marriage. At the time of the marriage, the respondent owned 610 shares out of a total of 2,262.2395 outstanding shares of Apex Corporation. There has been no change during the marriage in the respondent's holdings in Apex. Apex has no functions other than to hold 22,622.395 shares of J. R. Simplot Company, Class B stock. The ownership of J. R. Simplot Company is made up of 76.445 Class A shares and 72,545.950 Class B shares. The respondent's ownership of J. R. Simplot Company through his shares of Apex constitutes 8.4% of the total ownership of J. R. Simplot Company. The total retained earnings of J. R. Simplot Company at the

date of the marriage was $6,171,098 making the respondents' proportionate share (8.4%) amount to $235,269. As of July 31, 1971, the retained earnings of J. R. Simplot company had grown to $44,230,790, and the respondent's proportionate share had increased to $4,039,480. During the marriage the respondent's proportionate share of retained earnings had increased 88% or $3,789,090.

It is provided in I.C. § 32–903 that all property acquired before marriage remains the separate property of the acquiring spouse. Since the 610 shares of Apex were acquired before the marriage, they are the respondent's separate property.

It is provided in I.C. § 32–906 that,

"All other property acquired after marriage by either husband or wife, including the rent and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use; in which case the management and disposal of such rents and profits belongs to the wife, and they are not liable for the debts of the husband. Rent and profits as used in this chapter shall mean income only."

It is the appellant's position that the respondent's proportionate share of the increase in retained earnings during the marriage is rent and profit of his separate property and in accordance with I.C. § 32–906 is therefore community property.

There are no Idaho cases dealing with the character of retained earnings of a corporation which are earned and accumulated during a marriage.[1] The only other community property states that provide that rents and profits of separate property are community property are Louisiana and Texas.[2] The Louisiana statute[3] is of no

---

1. Speer v. Speer, 96 Idaho 119, 525 P.2d 314, dealt with the issue of the characterization of retained earnings, but since a petition for rehearing has been granted in that case, it cannot be considered as a final opinion of this Court.

2. W. De Funiak & M. Vaughn, Principles of Community Property § 71, at 161 (1971); W. Brockelbank, The Community Property Law of Idaho, § 3.7.2, at 169 (1962).

3. Dainow's Civil Code of Louisiana § 2408, La.Civil Code 2386, 2402.

guidance in this action because the Louisiana legislature has limited increases in value of separate property that become community property to those increases due to "common labor, expenses or industry." The Texas provision that rents and profits of separate property is community property has been arrived has been arrived at by judicial construction of art. 16, § 15 of the Texas Constitution, Vernon's Ann.St. which defines the separate property of the wife.[4] Since Texas has no comparable constitutional or statutory provision, its cases dealing with rents and profits are of no assistance in construing I.C. § 32–906.

In the case of Gapsch v. Gapsch[5] it was held that the natural enhancement in value of separate property remained separate property and was not rent or profit. That case involved the sale of an automobile that was the husband's separate property which resulted in the realization of a fifty dollar gain. The wife claimed that the gain was a profit and pursuant to I.C. § 32–906 was community property. This Court held that,

"The enhanced value of the car was not due to the employment of community effort, labor, industry or funds but was a natural enhancement due to the ordinary course of events. The proceeds of the sale thereof, including the profit of $50, remained the separate property of the husband."[6]

First, it must be determined whether separate property stock's proportionate share of an increase in a corporation's retained earnings is rent and profit or natural enhancement. In the case of Malone v. Malone[7] rents and profits were held to mean net rents and net profits. Subsequently, I.C. § 32–906 was amended to state that rents and profits mean income only. The record establishes that there has been a dramatic increase in J..R. Simplot Company's retained earnings, but the respondent has no means of obtaining the use or control over his proportionate share of the retained earnings.

"Corporate earnings and profits remain the property of the company, until severed from the assets and distributed as dividends among the stockholders entitled thereto. A stockholder has no property rights in the accumulated earnings and surplus of the corporation, and any right that he may have to cumulated undeclared dividends is not a vested property or constitutional right but is subject to change or cancellation by proper corporate law. It is the declaration of the dividend which creates both the dividend itself and the right of the stockholder to demand and receive it."[8]

The retained earnings of J. R. Simplot Company are not accumulated as a cash account, but rather the corporation's earnings have been reinvested in the expansion of the business through the purchase of plant and equipment.[9] The decision of the directors to reinvest the earnings is a matter of business judgment,[10] and the growth of the J. R. Simplot Company demonstrates that it was a sound de-

4. W. De Funiack & M. Vaughn, *supra*, note 2, at footnote 98, W. Brockelbank, *supra*, note 2, at footnote 17.

5. 76 Idaho 44, 277 P.2d 278 (1954).

6. Gapsch v. Gapsch, *supra*, note 5, at 52, 277 P.2d at 283.

7. 64 Idaho 252, 130 P.2d 674 (1942).

8. 11 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5321 at 613 (1971). *See also*: 7 S. Thompson & J. Thompson, Law of Corporations § 5307 (3rd ed. 1927).

9. The retained earnings item of the proprietorship section in the balance sheet of July 31, 1971, is not identified with specific assets in the asset section which indicates that retained earnings generally reflect the investment necessary for operation of the corporation.

10. 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 526 (1969) ; L. Foster, Understanding Financial Statements and Corporate Annual Reports, 22 (1968) ; H. Guthmann & H. Dougall, Corporate Financial Policy, 507–529 (3rd ed. 1955) ; A. Grunewald & E. Nemmers, Basic Managerial Finance, 352 (1970).

cision. For this Court to declare that the respondent is entitled to a portion of the retained earnings would be in effect to require the J. R. Simplot Co. to declare a dividend and then require Apex Corporation to declare a dividend and thus, substitute its judgment for the business judgment of the directors of both the Simplot and Apex Corporations. Since the respondent has no legal right to the retained earnings and since there is no guarantee that they will ever become of economic benefit to him, they are not income or rents and profits as the terms are used in I.C. § 32–906.

The existence of separate property is recognized by I.C. § 32–903 which provides:

> *"Separate property of husband and wife.* —All property of either the husband or the wife owned by him or her before marriage, and that acquired afterward by either by gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property."

In the *Malone* case it was held that,

> "[I.C.A. § 31–907] of the code, heretofore quoted, providing that property acquired after marriage by either husband or wife, including the rents and profits of their separate property, is community property, refers to net rents and profits, and is not to be construed to mean that the gross income from separate property belongs to the community. To hold otherwise would cause the community to, in time, entirely consume the separate estates of the members thereof and would nullify [I.C.A. § 31–903 and § 31–906.]" [11]

The right to preserve separate property was acknowledged in the *Malone* case. Respondent owned 610 unencumbered shares of Apex before the marriage; there were no changes in his ownership during the marriage; at the dissolution of the marriage the respondent should still own 610 unencumbered shares of Apex stock to be consistent with the right to own and maintain separate property. If the increase in retained earnings allowable to the 610 shares of Apex stock is held to be community property, the result will be to divide and distribute part of the respondent's stock owned as separate property. Similar to the holding in the *Malone* case, the increase in retained earnings in this action must be considered natural enhancement and not income or rents and profits in order to preserve the right to own and hold separate property.

The appellant contends that if retained earnings are not held to be a profit, then the husband may deny the community his business earnings by incorporating the business. In this action the respondent has served on the board of directors of J. R. Simplot Company, but the appellant does not allege that the retention of earnings has been fraudulent or intended to deprive the community of funds. There is no evidence that the respondent did not receive an adequate salary in relationship to his responsibilities. Furthermore, there is no evidence that the respondent used the corporate structure to deprive the community of earnings.[12] The courts must be vigilant to protect the community from the use of business organizations to deprive the community of earnings that are the result of community labor, but there is no allegation or evidence in this action of an attempt to prevent the community from enjoying earnings of community labor.

The second issue involved in the determination of the character of retained earnings is whether the increase in retained earnings was due to community labor. In its findings of fact, the trial court held,

> it was held that corporate retained earnings were community property since corporation was alter ego of husband.

11. Malone v. Malone, *supra*, note 7, at 261, 130 P.2d at 678.

12. *See:* Dillingham v. Dillingham, 434 S.W. 2d 459 (Tex.Ct. of Civ.App.1968), in which

"Plaintiff Don J. Simplot is now, and has been during a substantial portion of the time since his marriage to the defendant an officer of the J. R. Simplot Company; plaintiff was not shown to possess any special skills, knowledge, or talent or to have received any formal education or training in the types of businesses and industries conducted by the J. R. Simplot Company or its subsidiaries or in the fields of business administration, finance, accounting, or corporate management; that the offices which plaintiff has held and now holds have been in large part sinecures, and plaintiff has during said period received adequate, ample and full compensation for his serivces rendered to J. R. Simplot Company; that the efforts, labor and industry of the plaintiff, or the community, have not contributed to any increase in the value of the company assets or the stock of J. R. Simplot Company or Apex Corporation during the marriage of the parties." [13]

The appellant contends that there was insufficient evidence to support the trial court's finding of fact that the community labor was adequately compensated and that the community labor did not increase the value of the corporation. Although there was conflicting evidence as to the adequacy of compensation received for the respondent's labor, the trial court is the arbiter of conflicting evidence, and its findings of fact will not be disturbed on appeal if supported by substantial and competent, though conflicting evidence.[14]

The trial court made findings of fact and conclusions of law that certain real property located in Ketchum, Idaho, was the respondent's separate property. The property in question was initially owned by J. R. Simplot Realty Corporation. In 1963, the J. R. Simplot Realty Corporation divided its Ketchum property into four parcels and deeded one of them to each of the four Simplot children. The trial court apparently found the transaction to be a gift transfer, and it held the Ketchum property to be the respondent's separate property.

The appellant contends that the transfer was *ultra vires* and not a gift since corporations are not generally authorized to give their assets to non-charitable beneficiaries. If the transfer was unauthorized, it was a wrong to the corporation. It has been held that,

"A cause of action based on conduct injurious to a corporation accrues in the first instance to the corporation, and only derivately to its stockholders. Prerequisite to a derivative action, a stockholder must show the corporation has refused a demand to sue or that such demand is excused as futile under the circumstances." [15]

There is nothing in the record indicating that the appellant is a shareholder of the Simplot Realty Corporation and therefore she has no standing to maintain a derivative action for recovery of the Ketchum property on behalf of the corporation.

In addition to arguing that the transfer was *ultra vires,* the appellant argues that it should have been characterized as dividend which would make it community property. Since there is nothing in the record showing that the respondent was a shareholder of Simplot Realty Corporation at the time of the transfer, the transfer cannot be classified as a dividend.

If the transfer was fraudulently disguised as a gift to deprive the community of the benefit of the transfer, the appellant would be entitled to claim the property as community property. However, there is

13. Clerk's transcript, pp. 96–97.

14. Enders v. Wesley W. Hubbard and Sons, Inc., 95 Idaho 590, 513 P.2d 992 (1973); DeAtley Corporation v. Otto, 95 Idaho 586, 513 P.2d 638 (1973); Hollandsworth v. Cottonwood Elevator Company, 95 Idaho 468, 511 P.2d 285 (1973).

15. Knutsen v. Frushour, 92 Idaho 37, 436 P.2d 521 (1968); see also: 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5911 at 285 (1970).

no evidence or allegation of fraud and therefore the trial court's finding that the Ketchum property is the respondent's separate property must be affirmed.

In its findings of fact the trial court found that the following items were community property:

"\* \* \* 999 shares of common stock in M & L Investment Co. of the value of $67,400.00 \* \* \* 25 shares of common stock in Claremont Realty Company of the value of $5,700.00."

In the division of the community property, the trial court awarded the shares of M & L Investment and Claremont Realty to the respondent. The appellant assigns as error the awarding of all such stock to the respondent and argues in support thereof that the value of the stock had not been clearly established. The only evidence presented concerning the value of the stock was the book value of the corporations. The appellant contends that the value of the property owned by the two corporations exceeds the book value.

 The division of the community property is governed by I.C. § 32–712(1) which states that,

"The community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the condition of the parties, deems just, regardless of the ground or grounds on which the dissolution decree is rendered."

The trial court is vested with wide discretion in the division of community property, and it has been held that an exact mathematical division of the community property is not necessary.[16] All that the statute requires is a "just" division. However, the record does not reveal the basis upon which the trial court awarded the shares to the respondent. It may be that the trial court believed that the award was fully justified by the lump sum award to the appellant and her lack of business experience.

To aid and assist the parties in understanding what the trial court intended, this action must be remanded for clarification of the rationale followed in awarding the stock to the respondent. The parties should also be permitted to offer additional evidence concerning the valuation of the property. As an aid to the trial court and counsel the following discussion may be of value toward final disposition. In a division of community property such as stock in a corporation, where the shares are not divided between the parties, but are valued by the trial court and then properties of relatively equal value are distributed to each of the parties, it is essential that the trial court make an accurate determination of the market values of the properties prior to making an award. The determination of the market value of the assets awarded must be based upon competent and substantial evidence. In this case, there was no evidence of market value introduced by either appellant or respondent concerning the M & L stock and the Claremont Heights stock. At one point, witness Dahl did testify as to what in his opinion was the book value of those assets, and it appears that the trial court accepted that figure as market value. However, book value of assets merely reflects the historical cost of an asset, adjusted for depreciation. The book value of rapidly appreciating assets, such as real estate of the type held by Claremont Realty which surrounds the Highlands Subdivision in Boise, Idaho and depreciable livestock such as held by the M & L Investment Company, will have little relationship to its actual or market value. Since the only evidence of value in this case was the testimony of Dahl concerning the book value of the stocks in those companies, this evidence was not sufficient evidence of market value to justify the awarding of the stock to the husband based upon book values.

The trial court's findings of fact held that the following debts were community

---

16. Shepard v. Shepard, 94 Idaho 734, 497 P.2d 321 (1972); Meredith v. Meredith, 91 Idaho 898, 484 P.2d 116 (1967).

obligations and assigned them to the respondent in the division of the community property:

1) $35,430 to J. R. Simplot Company;

2) $250 to Claremont Realty;

3) $10,000 to M & L Investment Company.

The debts are not evidenced by written instruments, but are accounts on the corporation books. The debts have no due dates nor is there an interest charge.

The appellant contends that the trial court erred in classifying the above accounts as debts because they will never be collected. As an example of how these accounts will be satisfied without expense to the respondent, the appellant recounts that the respondent was given coal leases by the J. R. Simplot Company which were immediately sold and the funds applied to his account with the J. R. Simplot Company. The coal leases were given to all four Simplot children and there is nothing in the record to indicate that the other three children had accounts with the J. R. Simplot Company that were reduced by their proceeds from the sale of the leases. By applying the proceeds from the sale of his coal leases to his account with J. R. Simplot Company, the respondent demonstrated the reality of his debt. There is no evidence to indicate that the accounts with M & L Investment and Claremont Realty are not debts. The trial court's finding that the three accounts were community debts must be affirmed on this record.

The trial court's findings of fact also held that a debt of $98,720 owed to Idaho Bank & Trust Company was a community debt and assigned it to the respondent. The debt was incurred by the respondent in starting a restaurant business that failed. The appellant claims that since she did not sign the note of indebtedness to Idaho Bank & Trust, it is not a community debt, but it is the separate debt of the respondent.

A rebuttable presumption has been established that all property acquired during the marriage is community property.[17] There is nothing in the record to indicate that the Idaho Bank & Trust debt was not incurred for the benefit of the community, and it is therefore presumed to be a community debt.

The trial court awarded the appellant $500 a month alimony and $200 a month child support for each of the four children which totals $1,300 a month for living expenses. The appellant was awarded the family home and the respondent was required to make the mortgage payments. The appellant also received a cash payment of $25,500 in the division of the community property. The appellant contends that the trial court erred in the award of alimony and child support payments on the grounds they were insufficient.

In the case of Shepard v. Shepard, it was held,

"Regarding the alleged error in allowing only $200 per month alimony, it is well settled in Idaho law that alimony is not awarded to the wife as a matter of right, but only at the discretion of the trial court. [Citations omitted.] Such an award is proper in such amount as the trial court deems just whenever the husband is not free from fault, and the wife's fault, though possibly sufficient to allow a divorce in favor of the husband, is not so grievous as to mandate a denial of alimony. I.C. 32–706. [Citations omitted.] In ascertaining whether a given alimony award is just, the current philosophy of this court can be characterized as one of due consideration of the correlative needs and abilities of both parties." [18]

Although the appellant appears to have no vocation and was not employed during the marriage, there is nothing in

17. Evans v. Evans, 92 Idaho 911, 453 P.2d 560 (969); Cargill v. Hancock, 92 Idaho 460, 444 P.2d 421 (1968).

18. Shepard v. Shepard, *supra*, note 16, at 736–737, 497 P.2d at 323.

the record indicating that she has any physical limitations which would preclude her from finding employment. The alimony and child support payments in addition to the fact that the appellant has the free use of the family home were considered by the trial court to be an adequate income and its decision cannot be said to be an abuse of discretion and must be affirmed.

The trial court's judgment is affirmed in part, reversed in part, and remanded in part for reconsideration of the division of community property in accordance with the views expressed herein. The question of attorneys' fees for both the trial and the appeal shall also be considered on remand.

DONALDSON and BAKES, JJ., and NORRIS, D. J., concur.

SHEPARD, Chief Justice (dissenting).

I concur in the holding of the majority that appellant is not entitled to a part of "the retained earnings" of J. R. Simplot Company. There is no question but that the actual stock is the separate property of the respondent. The only question is whether there were rents and profits (defined in I.C. § 32–906 as income) which constitute community property. Although there may be retained earnings of the corporation, such appears to me to be academic since in the present case no dividends have been declared and therefore neither appellant nor respondent have any interest (except in futuro) in any retained earnings. It is stated in Fletcher's Cyclopedia of Corporation, Sec. 5321, p. 613 " * * * the cases are in entire harmony on the point, that the earnings and profits of a corporation remain the property of the corporation until severed from corporate assets and distributed as dividends. Until that time stockholders have no property interest therein."

Although the corporation appears to be largely controlled by respondent's father there is nothing to show that respondent himself had any more control over the distribution of earnings or any other company policy than would a small stockholder in a large publicly held General Motors type of corporation. Thus there would appear no basis for a piercing of the corporate veil on the basis that it was only the alter ego of the respondent or that fraud was committed.

It was stated in Hiatt v. Hiatt, 94 Idaho 367, 487 P.2d 1121, that to the extent that the labor industry or efforts of the parties contribute to the value of separate property of one of the parties the community is entitled to be reimbursed from the separate estate. In *Hiatt* the trial court found that a separate business of the husband was enhanced by the application of profits to reduce indebtedness and therefore that the wife had gained an interest in the separate estate. That finding and result was sustained on appeal. The case at bar is the converse of *Hiatt*.

There is nothing in the evidence to indicate that the labor industry or effort of the parties hereto contributed to any enhanced value of the stock in the corporation or that the labor industry or efforts of the parties hereto contributed to the accumulation of corporate retained earnings. All the evidence is to the contrary and justifies the finding of the trial court.

I continue to disagree with the majority's reliance on Malone v. Malone, 64 Idaho 252, 130 P.2d 674. In *Malone* the court said:

"On dissolution of the marriage, by divorce, the community estate was entitled to be credited, and the estate of the husband charged, with expenditures made from community funds in improvement of his separate property, . . ." 64 Idaho at 253, 130 P.2d at 677.

I further disagree with the majority's interpretation of Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278. The actual language of that case states:

"As a general rule, the natural enhancement in value of separate property during coverture does not constitute community property; however, to the extent an enhancement in value is due to community efforts, labor, industry or funds, it

falls into the community. * * * Again, as a general rule, though not absolute, a so-called profit or gain from the sale of separate property occasioned by a natural enhancement in the value of such property, constitutes a part of the separate estate." 76 Idaho at 52, 277 P. 2d at 282.

In *Gapsch* the court held that most of the separate property of the husband had been enhanced by community effort and awarded the wife an interest in the husband's separate property. *See also* Hiatt v. Hiatt, *supra.*

The trial court found that certain property in Ketchum, Idaho was the separate property of the respondent and awarded it to him. The majority suggests that the trial court "apparently found the transaction to be a gift transfer." The trial court found only that it was the respondent's separate property. The only testimony regarding that transaction indicates that a wholly owned subsidiary of J. R. Simplot Company carried such property on its books at a zero valuation and transferred it to the respondent who was a vice-president, director and full-time employee of J. R. Simplot Company.

The Ketchum property was acquired during marriage and is presumed to be community property. The burden of proving otherwise was on the respondent. In my judgment the testimony is not persuasive of a "gift" by the corporation. Such must be established by "clear and convincing" evidence. Idaho First National Bank v. First National Bank of Caldwell, 81 Idaho 285, 340 P.2d 1094. The majority herein finesses the question by holding that the appellant has no standing to contest the gift since she is not a stockholder of Simplot Realty [which she is not] which corporation is a wholly owned subsidiary of J.

R. Simplot Company [of which she is a stockholder]. I believe the holding of the majority begs the question of whether the respondent established the status of the Ketchum property as a part of his separate estate. I would hold that the Ketchum property is community.

The majority opinion approves the trial court's finding that a debt of $98,720 to Idaho Bank and Trust Company was a community debt and affirms the trial court's action in assigning said debt to the respondent. That alleged community indebtedness was of course considered by the trial court in its allocation of community assets and community indebtedness. I disagree with the opinion of the majority to the extent that it affirms the trial court's finding of a community indebtedness. That indebtedness allegedly represents moneys which were used in the operation of a business known as Todd's Haufbrau. The testimony indicates that J. R. Simplot Company advanced approximately $75,000 for the operation of that business. When the business was liquidated and sold the proceeds thereof went to Inland Terminal, a corporation owned by the Simplot family. The testimony is also clear that the appellant had no knowledge of such financing operation and that she joined in no instrument evidencing indebtedness to the Idaho Bank and Trust. One must be credulous in the extreme to assume that the community credit was the basis for the respondent borrowing nearly $100,000 from a bank on an unsecured personal note. I would suggest rather that the above noted evidence taken together with the nearly $4,000,000 separate property estate of the respondent suggests clearly and pointedly that the moneys were extended upon the separate credit of the respondent and that the debt should be found to be the separate debt of the respondent.