690 P.2d 366

**Thomas M. DONNDELINGER, Plaintiff-Appellant,**

v.

**Marcia N. DONNDELINGER, Defendant-Respondent.**

**No. 14576.**

Court of Appeals of Idaho.

Oct. 29, 1984.

Roger L. Williams, and Steven Adamson and Henry F. McQuade (argued) (Adamson, Young & McQuade), Nampa, for plaintiff-appellant.

Stanley W. Welsh (Clemons, Cosho & Humphrey, P.A.), Boise, for defendant-respondent.

BURNETT, Judge.

This appeal focuses upon the division of community property in a divorce. The trial judge held that the division should be substantially equal. Neither party has challenged that determination, but the husband has appealed because he believes the actual result under the final decree was substantially unequal.

The appeal embraces two principal issues: (a) In order to achieve equality, should the judge have made specific find-ings concerning the value of community property and the amount of community debt? (b) Should the judge have taken into account the husband's payment of certain community obligations, pursuant to an interim court order, when dividing the community estate in the final decree? Because we answer both questions in the affirmative, the divorce decree is vacated in part and the case is remanded. Section I of our opinion depicts the procedural and factual context in which these issues have arisen. Section II examines each issue substantively and disposes of subsidiary questions.

I

After fifteen years of married life, Thomas and Marcia Donndelinger separated and sued for divorce. Both agreed that the marriage should be dissolved for irreconcilable differences, but they were unable to agree upon the division of community property. Discovery proceedings ensued. In the meantime, a magistrate ordered the husband to provide temporary child and spousal support and to "pay the debts of the parties accumulated to the date of this Order." When the case later came to trial, the husband testified that he had paid some "$42,000 in bills" and that community debts of approximately $22,000 remained. Unfortunately, the husband's testimony did not fully distinguish between debts existing when the interim order was entered and debts later incurred.

The value of the community property also became a murky subject. Although the real property presented no complexities—the parties having sold their land and each having received about $18,000 in proceeds—the personal property was fraught with controversy. Pursuant to a pretrial order, both parties filed lists identifying personal property in the possession or control of each spouse and placing a value on each item. These lists differed materially as to values. At trial the spouses gave testimony controverting each other's figures and the wife called an expert witness whose appraisal contained yet another set of figures.

Faced with these nettlesome conflicts, the magistrate issued a decree of divorce, later to be followed by an amended decree. In the initial decree, the magistrate made no findings on the value of particular items of property nor on the amounts of specific debts. Rather, he simply awarded the husband certain property listed in a Schedule A and placed a total value of approximately $55,000 upon it. This schedule omitted the husband's $18,000 from sale of the real property, it being undisputed that the money had been spent. The wife was awarded certain property listed in a Schedule B, together with a bank account and a car which she had acquired with her $18,000 share of the real estate proceeds. The court found the wife's total award to have an aggregate value of approximately $40,000. Finally, the husband was directed to pay all outstanding community debts listed in a Schedule C. The court, without determining the amount of each debt, stated that they totalled $30,000, despite the husband's testimony that they amounted to $22,000.

On its face, this initial decree might have been viewed either as favorable to the wife or as providing a roughly equal division of the community property. If the husband's property in Schedule A were offset by the debts in Schedule C, his net distribution would have been approximately $25,000. Had his expended share of real estate proceeds been included in the calculation, his net distribution would have been $43,000. In either event, the wife's distribution was simply $40,000—the value ascribed to Schedule B and to the cash and car acquired from her share of the real estate proceeds.

However, the wife took a different view. Believing that the value placed upon her Schedule B property had been too high, and that the amount of unpaid community debts imposed upon the husband had been overestimated, she appealed. She noted that Schedules A, B and C closely resembled the husband's pretrial lists, with value figures removed. The wife further noted that these lists, although filed with the court, had not been admitted into evidence as exhibits at trial. Therefore, she argued, the decree was unsupported by the evidence. On appeal, a district judge agreed. He held that the magistrate's findings had not been based upon "competent" evidence and the case was remanded to the magistrate for further proceedings.

Upon remand, the magistrate conducted another hearing. Counsel stipulated in open court that the case need not be retried. Both sides adopted the existing record and adduced no new evidence. However, the husband's counsel asked the magistrate to treat as part of the evidence the husband's lists from which Schedules A, B and C had been derived. The wife's attorney objected, claiming there had been no opportunity to cross-examine on items contained in those lists. The magistrate upheld the objection.

After the hearing the magistrate issued an amended decree. This decree made no change in the property awarded to each spouse. It reincorporated Schedules A and B from the former decree and simply deleted any finding as to total values of property awarded. With respect to debts, the amended decree abolished schedule C, which had listed several obligations found to total $30,000. Instead, the amended decree directed the husband to pay a single community debt of $3,400. The amended decree also directed the husband to make an "equalizing payment" to the wife in the sum of $13,300. The source of this figure was not disclosed in the amended decree. However, the parties have surmised that the magistrate—having decided not to alter the property division and having found the community debts to be $3,400 rather than $30,000—determined that the husband was $26,600 better off under the amended decree than under the initial decree and that half of this amount should be remitted to the wife.

It then became the husband's turn to appeal. He launched two attacks upon the amended decree. First, he contended that neither the magistrate's findings nor the underlying evidence showed that the com-

munity estate had been divided equally. Secondly, he urged that the magistrate should have taken into account the community debts he had paid before trial, pursuant to the interim order.

In this second appeal, the district judge—a judge different from the one who heard the first appeal—affirmed the amended decree. He held that even if the community estate had been divided unequally, the law did not require equality. He further held that the magistrate had not abused his discretionary power to make an "equitable" division. Finally, the district judge rejected the husband's contention that the magistrate had erred by failing to take account of earlier debt payments. This contention was rejected, not on its merits, but upon a theory that the husband would not be heard to complain of such error because he had objected during trial to certain questions concerning his use of earnings while the parties were separated. The husband again appealed, bringing the case before us.

## II

A threshold task in any appeal is to identify, for each issue presented, the appropriate standard of appellate review. These standards are not always stated explicitly in arguments of counsel or in appellate opinions, but they remain the foundation of a proper analysis. As the following discussion reveals, the standards depend upon whether the issue presented is one of law, of fact, or of discretion.

### A

■ The first issue—whether the trial judge, in order to achieve equality, should have made specific findings on the value of community property and the amount of community debt—presents a hybrid set of questions encompassing law, fact and discretion. As we shall see, whether a magistrate should divide the community estate equally or in another equitable fashion is a question of discretion, guided by statutory and case law. It is a question of fact whether a magistrate, having decided to divide the estate equally, actually has achieved such equality. Finally, it is a question of law whether the magistrate, having decided to divide the estate equally, is required to establish the equality of the division by making particular findings concerning the value of property and amount of debt. We will address these questions in turn.

### 1

Since 1980, I.C. § 32–712 has directed the trial judge in a divorce case to make a "substantially equal division" of the community estate "[u]nless there are compelling reasons otherwise." Prior to 1980, the statute merely required any division to be "just." The pre-1980 statute reposed in the trial court broad discretion to divide property and debts. *Hammond v. Hammond,* 92 Idaho 623, 448 P.2d 237 (1968). However, the exercise of such discretion had been tempered by our Supreme Court's observation, in *Guy v. Guy,* 98 Idaho 205, 209, 560 P.2d 876, 880 (1977), that "[i]n the ordinary and normal situation and in the absence of factors which in the discretion of the trial court require otherwise, we would expect community property assets to be divided equally between the parties."

■ In this case, the initial decree of divorce was entered in 1979. Consequently, it was not governed by the 1980 statute, but it was subject to the Supreme Court's stated expectation in *Guy* that a magistrate would make an equal division in the absence of factors which indicated otherwise. As noted at the outset of this opinion, the magistrate determined that no such factors existed. Upon remand after the first appeal, the magistrate in 1981 reiterated this determination in the amended decree. Thus, the magistrate's determination to divide the estate equally was consistent not only with *Guy* but also with the intervening 1980 statute. Neither party has challenged this determination.

### 2

■ The next question is whether equality sought was equality achieved. This is a

factual question. By "equality" we do not mean a surgically precise halving of the community estate. Rather, we mean substantial equality, as denoted by I.C. § 32–712, and by the case law. *See, e.g., Shepard v. Shepard*, 94 Idaho 734, 497 P.2d 321 (1972). Thus, where a magistrate has set out to achieve equality, his decree will not be disturbed on appeal if it appears—upon substantial and competent, albeit conflicting, evidence—that the parties have received substantially equal shares. Unfortunately, in the present case, this test is more easily stated than applied.

As noted above, the magistrate made no findings in the amended decree as to the aggregate value of property awarded to each spouse nor as to the specific value of any item awarded. Implicitly, the magistrate—by finding a single community debt of $3,400 and by directing an "equalizing payment" from husband to wife of $13,300 —must have found that the property awarded the husband was worth $30,000 more than the property awarded the wife. This implicit determination is consistent with the aggregate property valuations contained in the schedules attached to the initial divorce decree. However, we must reject that determination for two reasons. First, it will be recalled that the initial decree was overturned by the district court, in an unappealed decision, as unsupported by "competent" evidence. Secondly, we have searched the record and have been unable to find a consistent set of property values which would yield a $30,-000 differential or a figure substantially similar to it.

■ Consequently, unlike the district court, we take no solace in the observation that the law requires only substantial equality, not strict equality. We simply cannot verify upon this record that even substantial equality has been achieved. Moreover, we believe the district court erred by attempting to salvage an apparently unequal division of the community estate by characterizing it as an exercise of discretion. Where, as here, a magistrate has found that no reason exists to make a

discretionary divergence from equality in the division of a community estate, any discretion-based standard of appellate review is inapposite. We hold that the district court erred by upholding the amended decree upon the ground that it did not represent an "abuse of discretion."

We recognize, of course, that the magistrate may have arrived at an unstated, aggregate value of property awarded each spouse and may have made his own, undisclosed determination as to particular items rather than merely accepting or rejecting the values suggested by the parties. However, we do not know whether the magistrate did so. He made no property value findings whatever in the amended decree. The question now is whether a magistrate should be required to make such findings.

3

■ The trial judge's general duty to make findings is well established as a matter of law. *See Owen v. Boydstrun*, 102 Idaho 31, 624 P.2d 413 (1981). Rule 52(a), of the Idaho Rules of Civil Procedure, provides that "the court *shall* find the facts specifically and state separately its conclusions of law thereon. ... Requests for findings are not necessary for the purposes of review." (Emphasis added.) The specific application of this duty to divorce cases has been recognized by our Supreme Court in *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974). There, as in the present case, an allegedly unequal division of community property was challenged on appeal. The primary focus of controversy was upon an allocation of shares of corporate stock. Our Supreme Court said:

> In a division of community property such as stock in a corporation, where the shares are not divided between the parties, but are valued by the trial court and then properties of relatively equal value are distributed to each of the parties, it is essential that the trial court make an accurate determination of the market values of the properties prior to making an award. The determination of the market value of the assets awarded must

be based upon competent and substantial evidence.

96 Idaho at 245, 526 P.2d at 850.

■ The logic of *Simplot* is not confined to cases involving shares of stock. It extends to all divorce cases where substantial equality is sought to be achieved, not by splitting each asset, but by valuing the assets and allocating them in a manner designed to achieve a substantially equal, aggregate result. Accordingly, we hold that trial judges must find the value of each material asset in such cases. By parity of reasoning, the amount of each material community debt also should be found. By "material" we mean an asset or debt sufficient to affect the substantial equality sought to be achieved by the decree. Of course, our holding necessarily is limited to assets and debts upon which the court has been furnished substantial and competent evidence of the value or amount.

Our holding is not intended merely to facilitate appellate review, although that is a worthy consideration. Specific findings also demonstrate to the parties that the trial court has examined their divorce case—one of the most important emotional and economic events in their lives—with due care and attention to the evidence. Most importantly, the requirement of explicit findings encourages a trial judge to rely upon objectively supportable grounds for his decision, and discourages subjective or attitude-influenced perceptions of the case. Without that objective basis, trial court fact-finding is, as Judge Jerome Frank once observed, a "soft spot in the administration of justice." J. FRANK, COURTS ON TRIAL 74 (1950).

We recognize that some decisions of our Supreme Court have not required trial judges to make such findings. There is a cluster of cases broadly holding or suggesting that a trial judge need not make findings unless specifically requested to do so. *See, e.g., Sorenson v. Adams,* 98 Idaho 708, 712, 571 P.2d 769, 773 (1977); *Anderson v. Lloyd,* 64 Idaho 768, 139 P.2d 244 (1943); *Reid v. Keator,* 55 Idaho 172, 39 P.2d 926 (1934); *Dewar v. Taylor,* 43 Idaho 111, 249 P. 773 (1926). However, *Sorenson* has been overruled on this point by *Owen v. Boydstun, supra.* Each of the other cases was decided before, and has been superseded by, the adoption of Rule 52(a).

We also recognize that some post-Rule 52(a) cases mention limits upon a trial court's obligation to make findings. However, we deem those cases to be distinguishable. In *Hammond v. Hammond,* 92 Idaho 623, 448 P.2d 237 (1968), our Supreme Court held that failure to find specific values of items of community property would not be reviewed on appeal where the omission had not been assigned as error and the appellant had presented no argument concerning it. Clearly, that situation does not confront us here. In *Evans v. Evans,* 92 Idaho 911, 453 P.2d 560 (1969), the Supreme Court held that where the trial judge found the value of each property item and the total value of both community and separate property, his failure to further find whether each item was community or separate in nature was not error if such additional findings had not been requested. Again, that situation is not presented here. The magistrate in this case made no valuation findings whatever in the amended decree.

■ In *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982), our Supreme Court held that a lack of findings may be disregarded by an appellate court only if the record is clear and yields an obvious answer to the relevant factual question. Absent those circumstances, a failure to make findings of fact on material issues affecting the judgment requires the judgment to be set aside and the case remanded. In this case, it should be abundantly clear from the foregoing discussion that we have not found an obvious answer to the question of how the community property was valued. Accordingly, we conclude that the amended decree must be vacated, insofar as it divides the community estate, and the case remanded for additional findings concerning property valuation.

## B

For the purpose of guidance upon remand, we also consider questions relating to the community debts. The general issue raised by the husband is whether the magistrate, in dividing the community estate, should have taken account of community debts earlier paid by the husband pursuant to the interim order.

As mentioned in Section I of this opinion, the husband testified that he had paid some "$42,000 in bills," but he did not correlate those bills to the date of the interim order. We simply do not know, and the trial judge did not find, what portion of the "42,000 in bills" represented obligations existing before the interim order. The magistrate apparently deemed it unnecessary to make such a determination because he held that the husband was entitled to "no credit" for payment of any community debts before trial. Consequently, the question we must address is whether, as a matter of law, it was proper to disregard all pretrial payments of community debts.

■ It is well established that in dividing the community estate, a trial court must determine the extent and value of the community property, then deduct the community debts as well as any attorney fees or support payments required to be made with community funds, and then distribute the balance to the spouses. *See Mifflin v. Mifflin*, 97 Idaho 895, 556 P.2d 854 (1976); *accord, e.g., Murphey v. Murphey*, 103 Idaho 720, 653 P.2d 441 (1982); *Ross v. Ross*, 103 Idaho 406, 648 P.2d 1119 (1982). These cases deal with debts outstanding at the time of trial. None of them suggests that a spouse is entitled to a "credit" for community debts paid before trial with community assets. Indeed, *Mifflin* makes it clear that allowing the spouse such a credit would be tantamount to compelling the other spouse to pay his or her half of the community debts twice. Upon this rationale, the wife urges us to uphold the magistrate's decision to allow the husband no credit for pretrial payment of any community obligations.

However, we believe the wife oversimplifies the issue in this case by characterizing it as one of "credit." The husband asked the magistrate to take his pretrial debt payments into account because some of the money used to make those payments had come from his $18,000 share in proceeds from the sale of community real property. In contrast, the wife had retained most of her $18,000 share, investing it in a car and in a bank account. The magistrate declined the husband's request. In the amended decree, the magistrate stated that the wife's car and bank account would not be charged against her share of community assets because they had been acquired with her real estate proceeds. Apparently, the magistrate sought to avoid "double counting" those proceeds.

■ Each of the magistrate's decisions—to deny the husband "credit" for pretrial debt payments and to disregard the wife's cash and car—is understandable when viewed in isolation. However, the combined effect of these decisions is contrary to the basic lesson taught by *Mifflin* and its progeny. As noted, *Mifflin* requires that outstanding community debts be paid, or taken into account, before a final distribution is made of the community property. Here, by confirming to the wife assets she earlier acquired from a pretrial division of real estate proceeds, and by refusing to consider in the final decree any community debts paid by the husband with his share of those proceeds, the magistrate effectively distributed those proceeds before all community debts had been paid or taken into account. We hold this to be error.

The wife has argued—and the district court in the second appeal held—that even if the magistrate did err in this regard, the error was "invited" by the husband because he objected at trial to certain questions concerning his use of earnings while the parties were separated. However, a close examination of the record reveals that the husband did not object to questions concerning his use of money to pay community debts in existence when the

parties separated. Rather, his objection was to questions concerning travel and other personal expenses he had incurred after the separation. The magistrate, apparently unwilling to become involved in a detailed examination of the parties' living expenses and personal conduct during separation, sustained this objection.

 If the magistrate's decision had prevented either party from adducing evidence of additional community assets acquired, or of additional community debts incurred, during the separation, we would be constrained to hold that the magistrate erred on this point. A husband and wife remain married during separation, and any property acquired or debts incurred during that period are community in nature. *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976). But the husband did not seek to adduce such evidence. If he had, and was prevented from doing so, the wife's response of "invited error" might have been persuasive. However, the husband's claim of error on appeal relates not to the point that he might have been precluded from proving additional debts during separation. Rather, it relates to the point that the magistrate should not have confirmed to the wife assets she obtained with her share of real estate proceeds divided before trial, while disregarding the husband's payment of community debts from his share of those proceeds. We hold that the magistrate's error on this point was not "invited." On remand, we direct the magistrate to remedy the error by including the wife's bank account and car in the final determination of community property to be divided between the spouses.

## C

 Two subsidiary questions require mention in closing. First, the husband contends that the magistrate erred by refusing to treat his pretrial lists of property and debts as though they had been admitted in evidence. We disagree. In *Crollard v. Crollard*, 104 Idaho 189, 657 P.2d 486 (Ct. App.1983), we held that answers to interrogatories, although filed with the court, are not evidence unless offered and admitted at trial. Moreover, we stated that "answers to interrogatories do not become incorporated into evidence in a trial merely by allusion, indirect reference or physical presence before the court during the questioning of a witness." 104 Idaho at 191, 657 P.2d at 488. We believe the same rule should apply to the pretrial lists of property and debts submitted to the court in the instant case. The lists were not directly incorporated into the husband's testimony; they were mentioned only by general allusion.

 We are mindful of a possible distinction between pretrial exchanges of information by the parties, through discovery devices such as interrogatories, and the pretrial submission of information directly to the court, as occurred here. However, this would be a distinction with a real difference only if we were persuaded, as a general proposition, that all such pretrial submissions to the court should be treated as evidence. We are not so persuaded. Pretrial procedure under Rule 16, I.R.C.P., is a flexible tool for formulating issues and for identifying the exhibits or witnesses to be presented at trial. To hold that pretrial submissions constitute evidence would introduce adversarial rigidity into the pretrial process, diminishing its usefulness to the parties and to the trial judge. Accordingly, we hold that pretrial submissions do not constitute evidence unless so provided in the pretrial order or so stipulated by the parties. Neither of those exceptions applies to the instant case. Consequently, we sustain the magistrate's refusal to treat the lists as evidence. On remand, of course, the magistrate may admit the lists into evidence if a proper motion is made and if adequate opportunity is afforded the wife to cross-examine.

 The second subsidiary question is whether the magistrate erred by finding in the amended decree that only a single community debt of $3,400 was outstanding at the time of trial. Although this determination conflicts with the husband's pretrial list of outstanding debts, it is not subject to

**440**

challenge for that reason alone. The list, we have held, was not in evidence. However, the list did not comprise the husband's sole presentation concerning debts. As mentioned earlier, the husband also gave oral testimony that some $22,000 in community obligations remained to be paid at the time of trial. This figure was disputed by the wife, not upon the ground that such obligations were nonexistent, but upon the view that any debts other than the $3,400 obligation were not community debts or were mutual tax obligations with which the magistrate need not be concerned in a divorce proceeding. The magistrate neither made any finding regarding the existence of these obligations nor entered any conclusion of law as to why the obligations were not community debts to be allocated in the amended decree. Because the case is being remanded, we need not resolve this question on appeal. Rather, we direct the trial court upon remand to reconsider whether any community debts beyond the sum of $3,400 existed at the time of trial and, if so, to determine the parties' respective responsibilities for them.

Regarding the tax obligations, we further note that under federal law in effect when the amended decree was entered, if a divorce decree provided a substantially equal division of the community estate, and no separate property was employed to fund the division of community property, there would be no taxable gain attributed to either party. Otherwise, a tax impact might exist. *See generally* P. Peterson, *Community Property and Taxation*, COMMUNITY PROPERTY LAW OF IDAHO (Idaho

Law Foundation, Inc. 1982); J. Manning, *Tax Consequences of Divorce*, IDAHO FAMILY LAW HANDBOOK (Idaho Law Foundation, Inc. 1981). However, recent federal legislation, contained in the Deficit Reduction Act of 1984, has virtually eliminated recognition of gain or loss in divorce-related property transfers between spouses. *See* Pub.L. No. 98–369, § 421, 98 Stat. 739–95 (1984). Property transfers aside, any unpaid income taxes owed on community earnings during the marriage would represent a community obligation which, if significant in amount, should not be disregarded in making the final division of the community estate.

In summary, we conclude that those provisions of the amended decree which allocate community property and debts must be vacated. The divorce decree shall not otherwise be disturbed. The case is remanded for further proceedings consistent with this opinion. We award no costs or attorney fees; but the trial court on remand is authorized to make such an award, and to take into consideration the expenses of this appeal, if either party demonstrates an entitlement under the criteria prescribed by I.C. §§ 32–702(2) and 32–705.

WALTERS, C.J., and SWANSTROM, J., concur.