**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50752**

| | |
|---|---|
| JASON STEVEN HAWKE, | ) |
| | ) **Filed:  February 26, 2024** |
| Petitioner-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| PAMELA SUE HAWKE, nka PAMELA | ) **OPINION AND SHALL NOT** |
| SUE PETERSON, | ) **BE CITED AS AUTHORITY** |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Gerald F. Schroeder, District Judge.  Hon. Jill Jurries, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming the judgment modifying the decree of divorce, <u>affirmed</u>.

Cosho Humphrey LLP; Matthew R. Bohn, Boise, for appellant.  Matthew R. Bohn argued.

Breen, Ball & Marelius, PLLC; M. Sean Breen, Boise, for respondent.  Alyssa Jones argued.

_____

LORELLO, Judge

Pamela Sue Hawke, nka Pamela Sue Peterson, appeals from the decision of the district court, on intermediate appeal from the magistrate court, affirming the magistrate court's judgment modifying a decree of divorce.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2018, Pamela and Jason Hawke divorced pursuant to a stipulated judgment and decree of divorce.  As part of the stipulated decree, the parties signed a property settlement agreement that divided their community property and debts.  The agreement included a "catchall" provision that reads:

All other personal property and assets not otherwise delineated herein have been distributed by the parties, and each is fully satisfied with the distribution of said property. These items shall become the sole and separate property of the party in possession of said items.

The agreement also provided that "the parties represent that he or she is satisfied with the disclosures made to one another regarding the parties' debts and assets and desire no further disclosures."

Three years after their divorce, Pamela filed a petition to modify the decree. In her petition, Pamela alleged that the following community assets were omitted from the decree: Integrated Wealth Concepts, LLC (IWC); a horse and two horse trailers; the Katie Way property in Kuna; the Bay Oak property in Meridian; and a storage condominium. Pamela sought division of these assets post-divorce and requested a money judgment for one-half of their value. Pamela also sought a modification of the decree to allow her to provide health insurance for their minor children, to require Jason to share in the cost of the health insurance premium, and to require all uncovered medical expenses be shared pro rata.

At the trial on the petition to modify, the parties testified regarding the alleged omitted assets and submitted conflicting property debt spreadsheets (PDS), which each party claimed was the final PDS utilized to value the property in the decree. Despite certain debts and assets not appearing on one or both PDS, each party's PDS reflected a total of $5.5 million in assets to be divided between the parties. Jason also presented a report and expert testimony from an accountant who gave his opinion regarding the value of the community property and the percentage that was distributed between the parties in the divorce.

After hearing testimony and reviewing the evidence submitted at trial, the magistrate court found that IWC, the horse, and the horse trailers were "non-disclosed personal property" that the decree awarded to Jason and awarded those assets to him as his sole and separate property. The magistrate court further found that the Katie Way property, the Bay Oak property, and the storage condominium were "omitted" assets and awarded them to Jason. Relying on Jason's expert's testimony to some extent and the evidence presented at trial, the magistrate court concluded that "Jason may actually have been awarded $155,092.15 or $165,092.15 of additional assets," which resulted in Jason receiving 51 percent of the assets. The magistrate court found that, "despite Jason's lack of candor to Pamela regarding many of the assets . . . , it would be unjust to award Pamela a windfall, especially in light of her discovery waiver." However, in order to equalize the percentages,

the magistrate court awarded Pamela a judgment for an $80,000 equalization payment "to serve as a reasonable offset for the division of assets."

As to the minor children's health insurance coverage, the magistrate court found that, once Pamela placed the minor children on her husband's insurance in February 2020, she incurred no out-of-pocket expenses for health insurance purposes. As a result, the magistrate court determined Jason was not responsible for any health insurance premium payments to Pamela beginning in February 2020. The magistrate court, therefore, required Pamela to return any payments Jason made to Pamela for insurance premiums. The magistrate court also ordered that any out-of-pocket expenses and all uncovered medical expenses be shared pro rata, with Jason paying 91 percent of the expenses and Pamela paying 9 percent.

Thereafter, Jason filed a motion for reconsideration and/or motion to amend the magistrate court's findings. After reviewing Jason's motion and upon further examination of its calculations, the magistrate court amended its findings and conclusions.[1] The magistrate court found that "Jason received approximately $1,823,606 in assets (or 50.3%) and Pamela received approximately $1,801,348 in assets (or 49.7%)." As a result of the new calculations, the magistrate court lowered Pamela's equalization payment from $80,000 to $11,129. A judgment modifying the decree of divorce was subsequently entered.

Pamela appealed the magistrate court's decision to the district court, which affirmed. Pamela again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's

---

[1] The magistrate court found that the equalization payment was miscalculated and that it had "double-counted" the parties' 2017 IRS taxes.

3

findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

Where a trial court sits as a finder of fact without a jury, the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

## III.

## ANALYSIS

Pamela argues the magistrate court erred in its characterization, valuation, and division of assets that were omitted from the decree and that the district court erred in affirming the magistrate court. Those assets include IWC; a horse and two horse trailers; two pieces of real property--the Katie Way property in Kuna and the Bay Oak property in Meridian; and a storage condominium. Pamela also contends the magistrate court erred in its calculation and allocation of the minor children's health insurance premiums and that the district court erred in affirming the magistrate court in this regard. Jason responds that the record and applicable law supports the decisions of

4

both the magistrate court and district court.[2]  We hold that the magistrate court's findings with respect to each challenged asset are supported by substantial and competent evidence and that Pamela has failed to show the district court erred in affirming the magistrate court's decision.

## A.  Integrated Wealth Concepts, LLC (IWC)

IWC is a limited liability company registered to Jason.  The magistrate court found that IWC is an intangible asset that Jason created in 2008 to serve as a holding company and that Jason has solely managed and controlled IWC since its creation.  The magistrate court also found that Pamela was unaware of IWC's existence and that the decree was silent as to who would be awarded IWC.  However, the magistrate court noted that, other than a liquor license that was awarded to Jason as part of the original decree, there was no evidence showing IWC held any other assets other than real property separately addressed in the modification action.[3]  The magistrate court concluded:  "as a result of Pamela's decision to forgo formal discovery and allow the parties to keep what personal property or assets they possessed, [IWC] is non-disclosed personal property that the decree award[ed] to Jason" as part of the catchall provision.  As such, the magistrate court awarded IWC to Jason as his sole and separate property.  The district court affirmed, noting Pamela did not dispute the magistrate court's finding that IWC had no value other than its individual holdings in IWC and the Bay Oak property.

On appeal, Pamela contends the magistrate court's error was two-fold.  First, she argues that awarding Jason IWC as a result of her decision to forgo formal discovery was error unsupported by any case, rule, or statute.  Second, Pamela argues that IWC was an omitted asset that did not fall within the property settlement agreement's catchall provision because that provision fails to award or divide any property.  Because it is undisputed that IWC itself has no value to distribute, a point

---

[2]      The parties are reminded that, pursuant to I.A.R. 35(e), references to the transcript and the record should be included in the body of the brief "and shall not be included as footnotes or endnotes."  Further, pursuant to I.A.R. 35(a)(6) and I.A.R. 35(b)(6), the argument section should include "citations to the authorities, statutes, and parts of the transcript and record relied upon."  It is insufficient to only include such citations in the statement of facts.

[3]      The magistrate court noted that the Katie Way property was also temporarily owned by IWC prior to the sale of the property.  The district court also noted this, but stated the property owned by IWC was the Bay Oak property.  Despite the discrepancy, both the Katie Way property and Bay Oak property are part of this action and are addressed separately.

5

Pamela conceded at oral argument, a decision by this Court would have no practical effect on the outcome and would not result in any relief for Pamela. Thus, we need not address Pamela's arguments relating to IWC. *See Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 189, 370 P.3d 384, 392 (2015) (explaining that a claim for relief is moot when a favorable decision would not result in relief and an appellate court only reviews issues in which a judicial determination would have a practical effect on the outcome).

**B.    Horse and Horse Trailers**

Jason purchased two horse trailers prior to his divorce from Pamela. Jason testified the trailers were purchased with funds traceable to a Charles Schwab account that he believed would be awarded to him in the divorce. Jason also purchased a horse, which he testified occurred after the divorce. Neither the horse nor the horse trailers were listed in the property settlement agreement incorporated into the divorce decree, and the magistrate court found that Jason failed to disclose these assets to Pamela. However, because of Pamela's decision to forgo formal discovery and allow the parties to keep what personal property or assets they possessed, the magistrate court found that the horse and horse trailers were nondisclosed personal property the decree awarded to Jason. The magistrate court, therefore, awarded these assets to Jason as his sole and separate property. On intermediate appeal, the district court noted there was evidence that, "while not disclosed, these items derived from money traceable back to a [Charles] Schwab account that was treated as [Jason's] separate property." The district court concluded that, "if that be the case, non-disclosure would not defeat the equal division."

On appeal, Pamela argues, as she did with regard to IWC, that the magistrate court's decision to award the horse and horse trailers to Jason as a result of Pamela's decision to forgo formal discovery was erroneous because there is no case law, rule, or statute to support the magistrate court's conclusion. However, the record shows that the magistrate court's findings also relied, to some extent, on the parties' stipulated agreement which included a catchall provision. This forms the basis of Pamela's second argument on appeal. Specifically, to the extent the magistrate court found that the horse and horse trailers were not omitted assets, but were assets which fell under the decree's catchall provision, Pamela contends the magistrate court erred because the catchall provision failed to award or divide any property. Pamela cites *Pike v. Pike*, 139 Idaho 406, 80 P.3d

6

342 (Ct. App. 2003), and argues the catchall provision in this case is similar to the provision in *Pike*, which this Court deemed inapplicable to the omitted assets. We disagree.

In *Pike*, the petitioner filed a pro se divorce action using a form complaint. *Id*. at 407, 80 P.3d at 343. The form complaint did not list any personal property but did include a checked box indicating "the community personal property had been 'divided prior to this action.'" *Id*. The language in the divorce decree mirrored the language of the form complaint with regard to the division of community personal property, reciting that the community property was divided prior to the action. *Id*. However, the decree did not list specific items of personal property or purport to make any award of personal property to either party. Over a year later, the petitioner filed another complaint in the divorce case seeking division of the respondent's retirement accounts, which the petitioner alleged were omitted assets. *Id*. The respondent argued that the retirement accounts were not omitted and that the form complaint's checked box indicating all community property had been "divided prior to this action" meant the parties had agreed that the respondent would retain his accounts. *Id* at 408, 80 P.3d at 344. This Court agreed with the petitioner and explained that the language in the decree indicating the community personal property had been "divided prior to this action," unambiguously did not divide or award any personal property and did not describe what property was divided or how any such property was divided. *Id*. As a result, the decree did not adjudicate *any* community personal property and the retirement accounts were deemed omitted assets. *Id.*

The catchall provision in this case is distinguishable from the language on the form complaint at issue in *Pike*. For example, the language on the form complaint and decree in *Pike* did not list specific items of personal property or purport to make any award of personal property to either party, but the property settlement agreement in this case is eight pages long and includes language indicating how the parties wished to divide their real property, personal property, retirement accounts, and other accounts. The catchall provision in this case is located in the second section of the agreement, which lists the personal property and assets to be awarded to each party. A review of the record shows that this agreement reached between Pamela and Jason was a negotiated resolution regarding the parties' property, unlike the form complaint utilized by the parties in *Pike*. Thus, the language of the catchall provision in this case is distinguishable.

7

Moreover, the ordinary rules of contract construction apply in construing property settlement agreements in divorce cases. *Terteling v. Payne*, 131 Idaho 389, 391, 957 P.2d 1387, 1389 (1998). Where a contract is clear and unambiguous, the determination and legal effect of a contract provision is a question of law. *Id.* The express terms of the property settlement agreement provide that the parties were satisfied with the disclosures made in relation to entering into the agreement, that no further disclosures were desired, and that any personal property or asset not otherwise delineated in the agreement would become the sole and separate property of the party in possession. The horse and horse trailers fall within the type of personal property contemplated by the catchall provision. This Court will not interpret the agreement to place an obligation on a party not required by the agreement, nor will the Court make a better agreement for the parties than they themselves have been satisfied to make. *Id.* at 394, 957 P.2d at 1392.

Pamela has failed to show the magistrate court erred in enforcing the catchall provision of the property settlement agreement. Pamela has therefore failed to show the magistrate court erred when it awarded the horse and horse trailers to Jason as his sole and separate property or that the district court erred in affirming the magistrate court's decision.[4]

## C.     Katie Way Property, Bay Oak Property, and Storage Condominium

Prior to the parties' divorce, Jason bought property on Katie Way, property on Bay Oak, and a storage condominium. The magistrate court found that the Katie Way property, Bay Oak property, and storage condominium were omitted assets. On appeal, Pamela asserts the magistrate court erred in its analysis, valuation, and division of these omitted assets. Specifically, Pamela contends the magistrate court exceeded its jurisdiction because it modified the property division in the original decree when it revalued all of the assets awarded to the parties. Pamela argues the magistrate court erred in doing so because "it is very well established in Idaho that the magistrate courts do not retain

---

[4]     With respect to the horse and horse trailers, Pamela also argues that, to the extent the district court concluded Jason was awarded these assets because they derived from money traceable back to the Charles Schwab account which was treated as his separate property, doing so was error because the magistrate court did not determine whether Jason met his burden of proving his separate property claim. Because Pamela's argument regarding the magistrate court's alleged errors are dispositive of this issue on appeal, we need not address her challenge to the district court's conclusion that the horse and horse trailers were traceable to Jason's separate property.

jurisdiction to modify property provisions of a final judgment." We hold Pamela has failed to show the magistrate court erred in its analysis.

Causes of action based upon complaints for divorce are actions in equity. *McHugh v. McHugh*, 115 Idaho 198, 200, 766 P.2d 133, 135 (1988). Furthermore, equity having obtained jurisdiction of the subject matter of a dispute will retain it for the settlement of all controversies between the parties with respect thereto and will grant all proper relief whether prayed for or not. *Id.* Once the equitable jurisdiction of the trial court has attached, the trial court should retain jurisdiction to resolve all portions of the dispute between the parties. *Id.* Thus, the magistrate court had jurisdiction to divide an omitted asset, either equally or unequally, based upon consideration of the value of the assets and liabilities previously divided or assumed. *Id.*

Pamela's assertion that the magistrate court modified the decree's property division when it revalued all of the assets awarded to the parties is not supported by the record. In order to make an equitable distribution of the omitted assets, the magistrate court was required to consider the value of assets and debts previously distributed between the parties. The record shows that, while the parties presumably agreed upon the values of their community assets at the time the property settlement agreement was signed, the parties no longer agreed on the values at the time of trial. The magistrate court was therefore asked to determine the value of the assets based on the evidence presented at trial. This valuation process by the magistrate court did not modify the terms of the settlement agreement or decree, nor did it change the prior distribution of property. The magistrate court engaged in the valuation process for the sole purpose of determining how the omitted assets would be distributed.

Furthermore, to the extent that Pamela argues the magistrate court modified the terms of the settlement agreement or decree because of its reliance on Jason's expert's report and testimony, we disagree. The record shows that the magistrate court weighed the evidence presented at trial, including the testimony of the parties, Jason's expert and the parties' spreadsheets, and ultimately adopted its own position. While the magistrate court found Jason's expert's opinion "compelling," it also noted multiple discrepancies and conflicting values of assets provided by Jasons's expert. Where evidence is conflicting, the task of weighing the evidence is reserved to the trial court. *Bengochea v. Bengochea*, 106 Idaho 188, 190, 677 P.2d 501, 503 (Ct. App. 1984). The magistrate court elected not to utilize some of Jason's expert's values and, nevertheless, found that Jason

received 51 percent of the assets. Pamela's argument essentially asks this Court to reweigh the evidence presented at trial. It is well established that appellate courts in Idaho do not reweigh evidence. *Neustadt v. Colafranceschi*, 167 Idaho 214, 227, 469 P.3d 1, 14 (2020). Moreover, Pamela has failed to articulate any specific error in the magistrate court's analysis in awarding her the $11,129 equalization payment.[5] The magistrate court weighed the evidence presented at trial and determined the values it believed were most credible. We will not disturb those findings on appeal.

Finally, Pamela argues the magistrate court erred in unequally dividing the omitted assets in favor of Jason because the magistrate court failed to issue a finding that would support a disproportionate award of community property under I.C. § 32-712. However, after the magistrate court amended its findings and conclusions, the magistrate court found that "Jason received approximately $1,823,606 in assets (or 50.3%) and Pamela received approximately $1,801,348 in assets (or 49.7%)." The record therefore shows a difference of 0.3 percent between the magistrate court's division of the assets. While Pamela claims that she was entitled to one-half of the value of the assets once the magistrate court found that they were omitted from the decree, the magistrate court was not obligated to split the value of the omitted assets equally. In Idaho, the law requires only substantial equality, not strict equality. *Donndelinger v. Donndelinger*, 107 Idaho 431, 436, 690 P.2d 366, 371 (Ct. App. 1984). Substantial equality is achieved "not by splitting each asset but by valuing the assets and allocating them in a manner designed to achieve a substantially equal, aggregate result." *Id*. at 437, 690 P.2d at 372. Such a result was achieved here.

---

[5] Although the parties indicated they were unsure how the magistrate court determined the total amount of Pamela's equalization payment, a review of the record provides an explanation for the magistrate court's determination. Following trial, the magistrate court first found that Jason was awarded between $155,092.15 and $165,092.15 of additional assets and awarded Pamela a judgment for an $80,000 equalization payment. Presumably, the magistrate court calculated this total by dividing the approximate number of additional assets awarded to Jason in half. However, following Jason's motion for reconsideration and/or motion to amend the magistrate court's findings, the magistrate court determined Jason was awarded $1,823,606 in assets, while Pamela received $1,801,348 in assets. The magistrate court found the difference between the parties' respective awards was $22,258. As a result of the new calculations, the magistrate court lowered Pamela's equalization payment to $11,129. Thus, it is likely the magistrate court arrived at the $11,129 equalization payment by once again dividing the difference of the respective award in half.

The magistrate court's findings regarding the division of these omitted assets are supported by substantial and competent evidence. Pamela has failed to show error in the magistrate court's division of these omitted assets or the district court's decision affirming the magistrate court.

**D.      Health Insurance Premiums**

The parties' original divorce decree required Jason to provide health insurance for the parties' three children. Nevertheless, Pamela provided the insurance. After Pamela remarried, she added the children to her husband's health insurance in February 2020. The magistrate court found that once Pamela placed the minor children on her husband's health insurance, she incurred no out-of-pocket expenses for health insurance premiums because the insurance carrier only charged for the first two children covered on the policy, and Pamela's husband had six children, and insured five of them. The magistrate court concluded Jason was therefore not responsible for any health insurance premium payments to Pamela beginning in February 2020. Accordingly, the magistrate court found that "any payments made by Jason to Pamela since that time for health insurance shall be returned and/or reduced to a money judgment." The district court affirmed.

On appeal, Pamela argues the evidence at trial showed that her husband pays for the minor children's health insurance premiums. Specifically, Pamela points to trial Exhibit 307, which shows a total cost of $1,124.88 per month for her family's health insurance premium. From this amount, the record shows $601.46[6] is attributable to the health insurance coverage for Pamela's minor children and her husband's children.[7] Pamela contends the cost of insuring the minor children under her husband's plan can be calculated by taking the cost paid by her husband and dividing it by the total number of children insured through the plan. "In other words," Pamela argues, "the $601.46 should be divided by eight, which results in a cost per child of $75.18 and thus a total cost of $150.36 for [the minor children]." We disagree.

---

[6]      Pamela also states that the monthly cost to insure all of the children was scheduled to increase in 2022 from $601.46 to $656.92. Pamela's argument on appeal utilizes the $601.46 total to reflect the cost of insuring the children through her husband's health insurance plan.

[7]      The record indicates that, aside from the three children born during Pamela and Jason's marriage, Pamela's husband also insures his five children. Therefore, a total of eight children are covered by Pamela's husband's insurance. However, since one of Pamela and Jason's children is no longer a minor, there is no court-ordered support required for that child. Consequently, Pamela is only seeking compensation for the expenses related to insuring the minor children.

Pamela's argument fails to consider an important detail of her husband's insurance plan. The record shows that, under the terms of her husband's plan, the cost to insure children is fixed and remains the same once two or more children are added to the plan. In other words, the cost of insuring two children under the plan is identical to the cost of insuring any number of children greater than two. The record also shows Pamela's husband was already insuring five children through his plan prior to Pamela's minor children being added to the policy. Because the price to insure five children under the plan is identical to the price to insure eight children, Pamela and her husband incurred no added cost to their health insurance premiums as a result of insuring Pamela and Jason's children.

Pamela also makes a policy argument against the magistrate court's findings and argues the decision does not comport with the Idaho Rules of Family Law Procedure (IRFLP) or statutes, which require parents to share in the cost related to health insurance for their minor children. Pamela argues that it is the children's parents who are responsible for their care and support, not non-parents. According to Pamela, "this ruling essentially makes [Pamela's husband], a non-parent, bear the full cost of any portion of the premiums for which Jason and Pamela's children very clearly obtain a benefit--continued health insurance coverage." Pamela further asserts that the decision of the magistrate court is essentially "punishing [her husband] for providing insurance to his new stepchildren while granting Jason a windfall by removing his obligation to support the children's health insurance." We disagree.

The decision of the magistrate court complies with the IRFLP. The IRFLP provides the following with regard to health insurance premiums and healthcare expenses not covered by insurance:

> For each child support order, the court must consider health insurance coverage. Such health insurance should be provided *by the parent that can get appropriate coverage through an employer at the lower cost*. The cost paid by either parent for health insurance premiums or for health care expenses for the children not covered or paid in full by insurance, should be shared. . . . These costs will be shared between the parents based on their pro rata percentages under the Guidelines.

IRFLP 120(g)(4)(A) (emphasis added). The magistrate court abided by the IRFLP when it ordered Pamela to provide health insurance for the minor children because it was ordering the parent who could provide appropriate coverage for the children at the lowest cost to do so. Additionally, the magistrate court ordered the parties to share any out-of-pocket costs incurred by either party and to

share all uncovered medical expenses pro rata. As a result, Jason continues to have an obligation to support the minor children's healthcare needs.

The magistrate court's findings are supported by substantial and competent evidence. As such, Pamela has failed to show error in the magistrate court's modification regarding the calculation and allocation of the minor children's health insurance premiums or the district court's decision affirming the magistrate court.

## E.      Attorney Fees

On appeal, Jason requests an award of attorney fees and argues that Pamela unreasonably pursued this appeal. Pamela responds that Jason's request for attorney fees on appeal should be denied because she has presented "cogent legal argument justifying a reversal of the district court's decision."

An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). Because Pamela's arguments are not frivolous or unreasonable and do not lack foundation, Jason is not entitled to attorney fees on appeal.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's findings regarding the division of the nondisclosed and omitted assets, as well as the findings regarding the minor children's health insurance premiums. Pamela has, therefore, failed to show any error in the magistrate court's characterization, valuation, and division of assets subject to Pamela's request for modification. Pamela has likewise failed to show the district court erred in affirming the magistrate court's decision. Additionally, Pamela has failed to show error in the magistrate court's calculation and allocation of the minor children's health insurance premiums or error by the district court in affirming this decision. Accordingly, the decision of the district court, on intermediate appeal from the magistrate court, affirming the judgment modifying the decree of divorce is affirmed. Costs, but not attorney fees, on appeal are awarded to Jason.

Chief Judge GRATTON and Judge Pro Tem MELANSON, **CONCUR**.

13